655 So.2d 309 (1995)
Maxine WELCH and James M. Welch, Individually and on Behalf of Their Minor Children, Wendy Welch and Sabrina Welch
v.
WINN-DIXIE LOUISIANA, INC. and XYZ Insurance Company.
No. 94-C-2331.
Supreme Court of Louisiana.
May 22, 1995.
Michael J. Samanie, Herbert W. Barnes, Jr., Samanie, Barnes & Allen, Houma, for applicant.
*310 Dixie C. Brown, Carlos E. Lazarus, Houma, for respondent.
CALOGERO, Chief Justice.[*]
We granted plaintiff's writ application because this Court has not yet had occasion to address La.R.S. 9:2800.6 as revised in 1990 and its effect on a plaintiff's burden of proof in a slip and fall case. The jury awarded plaintiff damages for injuries sustained when she slipped and fell, allegedly in cooking oil, in a grocery store. The Court of Appeal reversed, finding that the jury's conclusion was clearly wrong, for plaintiff did not meet her burden of showing that the defendant had constructive or actual notice of the dangerous condition as required by revised La. R.S. 9:2800.6. Finding support in the record for the jury's verdict which implicitly found the existence of constructive notice, and determining there was no manifest error in that regard, we reverse the Court of Appeal and reinstate the judgment of the trial court. The revised version of La.R.S. 9:2800.6 does indeed increase the plaintiff's burden of proof (requiring the plaintiff to show that the merchant created or had actual or constructive notice of the condition which caused the damage), but it does not bar recovery of this plaintiff in this case.
Plaintiff Maxine Welch, 36 years old, and her thirteen year old daughter Wendy were grocery shopping at Winn-Dixie on the evening of Tuesday, June 25, 1991. Welch had worked that day, and after eating supper, she and Wendy arrived at Winn-Dixie about 5:40 p.m. Welch pushed her grocery buggy into aisle three in search of cake mix. Welch and her daughter walked past the cooking oil section to where the cake mix was located. Welch did not notice anything on the ground in the aisle. While looking at the cake mix, Welch realized she needed cooking oil. She left the grocery buggy with Wendy and walked back down the aisle to the cooking oil. When she arrived in front of the cooking oil, she slipped and fell on a liquid substance on the floor. At the time, Welch was wearing pants, a shirt and tennis shoes. She tried to get up, but it was too slippery. She called for her daughter and sent her for help. Wendy went to the back of the store and returned with Cranston Ross, the Assistant Manager, and Virgie Pellegrin, a Winn-Dixie seafood clerk. Pellegrin and Ross assisted Welch into a chair. According to Welch, Ross told her at that time that he could not see anything on the floor. Although Welch knew she had a liquid substance on her, she could not tell what it was because it blended in with the shine on the floor. Ross then wiped the floor with a paper towel and told Welch that it was cooking oil. He gave Welch some paper towels to wipe the oil off of her body and her clothing. Ross then completed an Accident Report and told Welch to see a doctor if necessary.
That evening Welch went to the emergency room, received pain injections and was advised to see an orthopedic doctor the next day. Over the next several months, she was treated by several physicians and eventually had back surgery. At the time of trial, approximately fourteen months after the accident, Welch had increased her activities to where she could walk one and one-half miles a day and do light-duty housework. She was still in pain and regularly took pain medication and a muscle relaxant. She testified that she had a problem standing for long periods of time. Welch testified that prior to the accident, she had worked at several minimum wage jobs, but at the time of trial, she was still unable to return to these or any other types of employment.
Welch and her husband, individually and on behalf of their minor children, filed a lawsuit against Winn-Dixie Louisiana, Inc., alleging in the petition that the sole and proximate cause of Welch's accident was the fault, negligence and strict liability of Winn-Dixie attributed to the following:
a) Failure to properly inspect and maintain the premises in a safe condition;
b) Failure to warn petitioner of unsafe conditions of the premises;
c) Failure to properly and routinely inspect the premises for unreasonable hazards *311 such as that which caused the subject accident;
d) Failure to keep the premises free of foreign substances which would have eliminated the cause of the subject accident; and,
e) Any and all other acts of fault, negligence and strict liability which may be proven at trial of this matter. Petition, ¶ 5
Claims for loss of consortium were also included for husband James Welch and children Wendy Welch and Sabrina Welch.[1] Winn-Dixie answered with a general denial and asserted the affirmative defense of plaintiff Maxine Welch's negligence.
The matter was tried on August 10 and 11, 1992 before a jury. During the case-in-chief, plaintiffs presented seven witnesses, including the following: Mr. Cranston Ross, Winn-Dixie Assistant Manager; Ms. Virgie Pellegrin, Winn-Dixie seafood clerk at the time of Ms. Welch's accident; Mr. Ronald Lee Quave, former Winn-Dixie Assistant Manager who had left Winn-Dixie's employ in May, 1991, one month before Welch's fall in the store; Dr. Dexter A. Gary, one of Welch's treating orthopedists; Mr. Nathaniel E. Fentrist, a rehabilitation counselor; Ms. Maxine Welch, plaintiff; and Dr. Roy D. Womack, an economist. Defendant Winn-Dixie called only two witnesses, Dr. Jonathan S. Wood, an economist; and Dr. Thomas Meunier, a vocational rehabilitation counselor who testified through his video deposition.
Cranston Ross testified that he had been employed with Winn-Dixie for nineteen years and was the Assistant Manager of the store in which Welch fell. He stated that he was the only Assistant Manager on duty at the time of the accident. He did not recall if any of the department managers were on duty at the time of the accident or how many cashiers, service clerks, or employees were on duty. He stated that the store is swept and mopped throughout the day as needed, and management personnel decide when sweeping is necessary by walking the store. Service clerks can make a decision themselves to sweep or mop if they see something on the floor. The store is completely mopped at closing time at night once the customers are gone. The floors are waxed by an outside contractor. At the time of the accident, replenishment of cooking oil stocks took place on Monday, Wednesday and Friday nights, and the shelf with the cooking oil should have been stocked the night before Welch's accident. Cooking oil is an item that moves quickly and from time to time must be restocked during the day. Ross testified that it was the responsibility of any management personnel or service clerk that might be in the area to inspect the cooking oil aisle, but no specific person was assigned the task of inspecting this particular aisle.
Ross testified that he inspected the store constantly throughout the day and it was his practice to inspect the store every ten to fifteen minutes while he was on duty. If he was detained, as much as thirty minutes might elapse without an inspection, but that was rare. This was Ross's own set procedure because Winn-Dixie provided no written directions as to how often inspections were to be done. Therefore, Ross did not know how often or at what intervals management personnel on other shifts would conduct inspections.
Ross testified that on the evening of the accident, he inspected the cooking oil aisle about five minutes before Welch's accident because he was in the aisle at a customer's request checking a price on cake mix, which was located on the other end of the aisle. Ross said he walked to within five feet of the cooking oil area, and inspected the aisle visually during this price check, although he did not walk in front of the cooking oil.[2] Ross was in aisle three to check a price for a customer who was waiting in front of the store, not specifically to inspect for hazards. Ross said he was about five feet from the area of the accident, yet he could not disagree with plaintiffs' counsel who estimated *312 that from right in the middle of the cake mix to where the accident occurred was about fifteen feet. After he checked the price on the cake mix, Ross said he looked down the aisle, but did not see any oil on the floor of the aisle. Ross admitted that the aisle was shiny and was depicted accurately in a photograph introduced into evidence. He also admitted that cooking oil could blend in very easily with that particular floor.
Ross could not remember when he last inspected the cooking oil aisle prior to his cake mix price check the evening of the accident, but his usual practice is to walk the store every ten to fifteen minutes.
Ross testified that after he checked the cake mix, he told the customer waiting at the front of the store the correct price, then he went to the back of the store and was standing at the back aisle helping a customer near the meat case when he learned of Welch's accident. Ross saw Wendy Welch asking for help. He followed her to where her mother was lying on the floor, and he noticed splatters of cooking oil on the floor. Contrary to Welch's testimony, Ross said that Welch was not lying in the area where the oil was located on the shelf. After the accident, Ross completed an Accident Report.
During his testimony, in response to plaintiff counsel's demonstration during which he poured oil onto the floor in the courtroom, Ross identified approximately how much oil was on the floor when he discovered Welch. The jury also observed a video tape of the aisles of Winn-Dixie and the floors.
Ross could not recall previous problems with cooking oil spillage or anyone mentioning a problem with oil spillage. He testified that he could not remember noticing any oil bottles with less oil than other ones, despite being shown a photograph exhibit clearly showing one bottle which contained less oil than the other bottles.[3] After the accident, Ross checked the shelves for the source of the oil. He did not see any leaking bottles, nor any empty bottles. He did notice oil under the shelf after the accident and a little white bottle cap which appeared to be from a bottle of vinegar. Ross did not take all the bottles of oil off of the shelf when he searched for the source of the spill. Ross did admit that in the past there had been leaking oil from loose caps.
Welch also called Ms. Virgie Pellegrin as a witness. Pellegrin was a clerk in the seafood department on duty at the time of the accident. She learned of the accident when Wendy Welch sought her aid. When Pellegrin first saw Welch, she was lying on the floor in cooking oil and was shaking badly. Welch had trouble getting up because it was very slippery. Pellegrin noticed oil on the floor and about midway under the shelf. She left to get cleaning supplies and warning signs. While cleaning up, which took about fifteen to twenty minutes, Pellegrin found a white cap that she testified looked like an Astor cooking oil bottle cap, although it had no date stamp on it. The cap was too small to be a vinegar bottle cap. She also stated that the oil was clear and blended in with the floor. If Welch had not been lying in the oil, Pellegrin testified that it would have been very difficult to spot the oil on the floor.
During the clean-up, Pellegrin removed all the oil bottles from the shelves. However, there was no oil on any shelf and there was no bottle missing any cooking oil.
The next witness to testify during Welch's case-in-chief was Ronald Quave, a former Assistant Manager for Winn-Dixie at the store where the accident occurred. Mr. Quave was not employed by Winn-Dixie on the date of the accident. Quave testified that at the time he left Winn-Dixie, management personnel were instructed to inspect every fifteen minutes. He did not recall any written directives on the appropriate inspection intervals. He reiterated Ross' and Pellegrin's testimony that it was basically all of the employees' responsibility to look for hazards.
Quave testified that while working at Winn-Dixie, he had previously had problems with bottles of cooking oil leaking onto the *313 floor, and that this problem had been discussed with other store managers, although Quave does not remember specifically talking to Ross about this problem. Quave had personally observed cooking oil leak onto the store floor on occasion, as well as cooking oil bottles damaged by being dropped, crushed, or cut and tops popped off. However, damaged bottles were not usually placed onto the shelves.
In general, Quave stated it was not difficult to see oil on the floor because it puddles up, unless the floor is very clean, which would make it difficult to notice a liquid on the floor. Upon questioning from defense counsel, Quave noted that the only time he had seen a large oil spill was prior to the installation of aluminum seals which were introduced into use before Welch's June, 1991 accident.
After testimony of the remaining witnesses, closing statements and jury instructions, the jury returned a verdict in plaintiff Welch's favor. In response to jury interrogatories, the jury found that Welch suffered an injury as a result of an accident at Winn-Dixie, that the accident was caused by Winn-Dixie because the conduct of Winn-Dixie was below the standard of care owed to Welch, and that Welch did not contribute through her own fault to her injury. The jury awarded damages to plaintiff Maxine Welch totalling $257,000. However, no damages were awarded on the loss of consortium claims brought by Wendy and Sabrina Welch.
Winn-Dixie appealed, and the First Circuit Court of Appeal reversed the judgment on the jury verdict. The majority concluded that Welch did not prove that Winn-Dixie had actual or constructive notice of the spilled cooking oil, as required by the applicable statute, La.R.S. 9:2800.6 as amended in 1990. All Welch proved was that a large amount of cooking oil from an undetermined source was on aisle three of defendant's store; that the oil was not visible to the casual observer but could be seen by one looking for hazards; that in the past defendant occasionally had problems with slow leaks in oil bottles, but when that happened, oil was found both on the floor and on the shelves; that no oil was found on the shelves after Welch's accident; that Winn-Dixie had no written policy regarding floor inspections, though it was the practice of the store managers to inspect the aisles every fifteen minutes; and that Assistant Manager Ross was in the vicinity five to ten minutes before the accident. 92 CA 2372 (La.App. 1st Cir. 8/22/94), 645 So.2d 647, 650. The Court of Appeal concluded that plaintiff did not present a "scintilla" of evidence that the oil was actually on the floor when Ross made his inspection.[4]
In a concurring opinion, Judge Parro of the five-judge panel opined that the statute as amended created an almost impossible burden on a claimant in a case such as this one because proof that the "condition" existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care, required that a beginning point of the "period of time" be established. Such point cannot be established without evidence of the inception of the condition, or testimony of an eye witness to the creation of the condition, which is obviously difficult to come by. Judge Fogg and Judge Watkins dissented, finding that the facts supported the conclusion of the jury. The jury could have disregarded or disbelieved Ross' testimony that he saw no oil on the floor when he inspected the aisle five to ten minutes before the accident. This is a reasonable conclusion because Ross was in the aisle to check a price, not to perform a floor inspection, opined the dissenters. No designated person was in charge of inspecting the aisle and there were no written inspection procedures. Winn-Dixie had no policy regulating the method of inspection. The record supports the jury's finding that Winn-Dixie had constructive notice because the oil would have been discovered had Ross properly inspected the aisle or if the store had had proper safety procedures. 92 CA 2372 (La.App. 1st Cir. 8/22/94), 645 So.2d 647, 653.
*314 We granted writs in this matter to address the plaintiff's burden of proof under La.R.S. 90:2800.6 as amended in 1990. After a thorough review of the record, we find that Welch sustained her burden of proof under this statute and that there was evidence in the record to support the jury's conclusion that Winn-Dixie had constructive notice of the hazardous condition prior to the accident. Accordingly, we reverse the Court of Appeal and reinstate the judgment of the trial court.
The present version of La.R.S. 9:2800.6 reflects an evolution in the law governing slip and fall cases in Louisiana, culminating in a decidedly pro-defendant statute. The statute as amended most recently, effective September 1, 1990, provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
The Court of Appeal majority opinion accurately traced the legislative and jurisprudential history of this statute. Before our 1975 decision in Kavlich v. Kramer, 315 So.2d 282 (La.1975), slip and fall cases were decided with plaintiff bearing the burden of proving defendant's negligence. However, beginning with Kavlich, the burden placed on merchant defendants gradually increased.[5] A presumption of defendant's negligence arose once a plaintiff established that a dangerous condition on the merchant's premises had caused the plaintiff's injury. The burden then shifted to the defendant to produce evidence to exculpate itself from the presumption of negligence because by design, a self-service grocery store distracts customers from looking at the floor and instead requires customers to focus their eyes on the items displayed on the shelves, making them vulnerable to objects dropped in the aisles.[6] In 1988, the Louisiana Legislature enacted La. R.S. 9:2800.6 which codified in part the jurisprudential shifting of the burden of proof to the defendant once the plaintiff proved he suffered damages as a result of a hazardous condition on the defendant's premises. The defendant then had the obligation to show that he acted in a reasonably prudent manner to keep the premises free of any hazardous conditions. In 1990, the Legislature changed direction completely and enacted the current version of the statute which, according to one commentator, codifies the "traditional" rule of liability requiring actual or constructive knowledge and places the burden of proof squarely on the plaintiff.[7]
*315 The Court of Appeal expressed the opinion that the effect of the 1990 amendment was to revert to the burden of proof in slip and fall cases that predated Kavlich v. Kramer, supra. A review of pre-Kavlich jurisprudence shows that to impose liability upon a merchant, the plaintiff had to prove that the merchant breached his duty of reasonable care in that a dangerous condition, which caused injury, was created or maintained by the storekeeper or one of his employees, or the merchant had knowledge of the condition, either actual or constructive. "Constructive knowledge" could be shown by the length of time the dangerous condition existed.[8] These required proof elements are specifically codified in La.R.S. 9:2800.6(B)(2): "The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence;...". "Constructive notice" is defined in La. R.S. 9:2800.6(C)(1) as when "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care". A cursory review of several pre-Kavlich cases is of assistance in determining the legislative intent underlying the amendment to La.R.S. 9:2800.6.
In Hay v. Sears, Roebuck & Company, 224 So.2d 496 (La.App. 3rd Cir.1969), a customer tripped and fell over several cans of paint located in the aisle within thirty minutes after the store opened. The Court concluded that the defendant had constructive knowledge of the dangerous condition posed by the paint cans because the cans were in the aisle for approximately thirty minutes which is sufficient time to give a storekeeper or his employees constructive notice of the existence of a dangerous condition in a portion of the store which customers are invited to use. In Fontanille v. Winn-Dixie Louisiana, Inc., 260 So.2d 71 (La.App. 4th Cir.1972), a customer in a grocery store slipped and fell on a piece of banana several aisles away from the produce section. The trial court entered judgment for the defendant, but the Court of Appeal reversed, finding that defendant's failure to provide reasonable and adequate cleanup and inspection procedures rendered it liable. The store manager had testified that all store employees are trained to look for floor hazards, and that while he inspected the store all day long, no definite times were assigned for inspection. No continuing and definite form of cleanup and inspection could be shown except for the twice daily sweepings. Based on its discoloration, it was evident that the banana had been on the floor for at least thirty minutes. The Court of Appeal concluded that had the defendant adopted a reasonable program of maintenance in clearing passageways, he would have discovered the foreign substance on the floor.
Likewise, in Estrade v. Winn-Dixie Stores, Inc., 286 So.2d 686 (La.App. 4th Cir. 1973), the Court of Appeal held defendant liable where the foreign substance remained on the floor for a period of time and the store lacked a definite and systematic program for discovery of such substance.
To date, this Court has not addressed plaintiff's required burden of proof set out in La.R.S. 9:2800.6 as amended in 1990. However, several Louisiana appellate courts have expressed opinions on the issue. In Oalmann v. K-Mart Corp., 630 So.2d 911 (La. App. 4th Cir.1993), the Fourth Circuit Court of Appeal affirmed a judgment for plaintiff who fell at a K-Mart when she slipped in a puddle of water inside the store on a rainy day. K-Mart's Accident Report noted the weather as "rainy", which was sufficient for the court to conclude that K-Mart had knowledge of the weather conditions on the day of the accident and should have known that the floor would become slippery, presenting a dangerous condition. The court specifically noted that there was no evidence establishing precisely how long the floor was wet prior to plaintiff's fall. However, the dangerous condition created by the water was still foreseeable by the defendant because *316 of the volume of business and the constant influx of customers. Even in the absence of precise evidence, the Court concluded that the accumulation of water at the entrance existed for such a period of time that K-Mart should have discovered the danger, and thus, K-Mart had the requisite constructive knowledge. Oalmann, 630 So.2d 911, 912.
In Parker v. Winn-Dixie Louisiana, Inc., 615 So.2d 378 (La.App. 5th Cir.1993), the Fifth Circuit Court of Appeal found Winn-Dixie liable for plaintiff's slip and fall on a clear liquid substance. There was testimony that no one had inspected the aisle five to ten minutes before the accident occurred and that defendant had no knowledge of the last time the aisle had been inspected prior to the accident. After the accident, a bottle of hydrogen peroxide was found with the top on but the safety seal punctured. The court concluded that Winn-Dixie had constructive notice of the liquid spill on the floor. In Saucier v. Kugler, Inc., 628 So.2d 1309 (La. App. 3rd Cir.1993), plaintiff slipped on a lemon in a grocery store and the Third Circuit Court of Appeal affirmed the trial court's judgment for the plaintiff. The Court of Appeal noted that there was no store policy regarding how inspections were to be conducted. This directly affected whether the merchant exercised reasonable care, as required by La.R.S. 9:2800.6, to keep his aisles in a reasonably safe condition and free of hazardous conditions. Whether the merchant's protective measures were reasonable
must be determined in light of the circumstances of each case, along with the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other such considerations.
Saucier v. Kugler, Inc., 628 So.2d 1309, 1312, citing Castille v. Great Atlantic & Pacific Tea Co., 591 So.2d 1299 (La.App. 3rd Cir. 1991) and Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App. 2nd Cir.1993). In concluding that the defendant was liable, the Court of Appeal considered several factors, but the most important factor was the failure to have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure.
With this legislative and jurisprudential background, we now turn to the facts before us. The record reflects that Winn-Dixie conceded that the cooking oil in this case presented an unreasonable risk of harm to the plaintiff and that such risk was reasonably foreseeable. However, Winn-Dixie contends that it did not create the condition, it did not have actual or constructive notice of the condition prior to the accident, and it did not fail to exercise reasonable care.
The trial court entered a judgment on the jury's verdict for plaintiff. However, the Court of Appeal reversed, finding that the jury's conclusion was clearly wrong; it was not reasonable because there was no evidence to support it. While noting our pronouncement of the appropriate standard of appellate review in Stobart v. State of Louisiana Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993), the Court of Appeal nonetheless substituted its factual findings for that of the trial court's. In Stobart, we instructed that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony or the facts. See Rosell v. ESCO, 549 So.2d 840 (La.1989). This is not to say that a trial court's factual determination cannot ever be reversed, and in Ambrose v. New Orleans Police Dept. Amb. Serv., 93-3099 (La. 7/5/94) 639 So.2d 216, we clarified that the court of appeal has a constitutional duty to review facts and to determine if the facts support the trial court judgment. However, even if the court of appeal would have decided differently had it been the original trier of fact, the trial court's judgment should be affirmed unless it is clearly wrong or manifestly erroneous.
Upon our review of this record, we do not conclude that the trial court judgment was clearly wrong or manifestly erroneous. In this close case, while we recognize the appellate court's responsibility to review facts, we also acknowledge that the facts herein and reasonable inferences drawn therefrom support the trial court judgment of Winn-Dixie's liability under La.R.S. 9:2800.6. The record *317 contains sufficient evidence from which the jury could have reasonably concluded that Winn-Dixie had constructive notice of the hazard created by the cooking oil and that it did not act with reasonable care. The jury's conclusion is supported by the testimony of plaintiff Welch, Assistant Manager Ross, seafood clerk Pellegrin, and former Assistant Manager Quave as well as the Accident Report and the photographic exhibits introduced into evidence.
Welch testified that she did not see the oil on the floor. She also testified that when Ross first approached her after she fell, he commented that he could not see what substance caused her to fall. This statement indicates the difficulty in seeing the oil on the floor and raises doubts about Ross' statement that there was no oil on the floor during his "price check" inspection. It also raises a question about the adequacy and reasonableness of Ross' "price check" visual inspection without walking directly past the cooking oil shelves.
Ross testified that the store was only swept once a day and that the cooking oil shelf was stocked the night before. He also stated that no one person was designated to inspect the cooking oil aisle. He also stated that it was his practice to inspect the entire store every ten to fifteen minutes while he was on duty, but admitted that if he was detained, the gap between inspections may be as much as thirty minutes. Winn-Dixie provided no written directions as to how inspections were to be done. Further, although Winn-Dixie instructed its employees on safety procedures, there were no written, established, or consistent policies for all employees to follow. Ross testified that it was everyone's responsibility to clean up dangerous floor conditions.
Ross testified that on the evening of the accident, he was in aisle three performing a price check on a box of cake mix five minutes before the accident. He stated that he did not walk past the cooking oil, although he did look down the aisle. He admitted that cooking oil could blend into the floor very easily. He did not recall the last inspection of aisle three prior to his price check. He stated that a customer was waiting for the price information. Ross also admitted that there was a discrepancy in his testimony in that the Accident Report which he completed clearly states the accident took place ten, not five, minutes after the price check inspection.[9] Ross stated at the time of the price check he was approximately five feet from the cooking oil section, yet he did not disagree with plaintiff's counsel's comment that the distance from the middle of the cake mix to the location of the accident was about fifteen feet.
Ross did not remember problems with cooking oil spillage, but former Assistant Manager Quave testified that sometimes the oil bottles leaked. The jury also saw a photograph where the levels of oil in several cooking oil bottles were different.
The trier of fact may accept or reject any part of a witness' testimony. Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555 (La. App. 4th Cir.1992). The trier of fact may choose to reject all of the testimony of any witness or may believe and accept any part or parts of a witness' testimony and refuse to accept any other part or parts thereof. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3rd Cir.1990); Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986). Thus, the jury may have chosen to accept parts of Ross' testimony and rejected other parts. The jury may have accepted the fact that Ross was in aisle three to make a price check just minutes prior to the accident. However, the jury may have rejected this price check as a reasonable inspection because Ross never walked in front of the cooking oil shelves, Ross was located at least five and up to fifteen feet away from the cooking oil, and Ross could not say when was the last time that this aisle had been inspected. The jury may have reasonably concluded that the oil was on the floor during Ross' price check but due to his inadequate and *318 unreasonable inspection procedure, his failure to walk past the cooking oil shelves, the condition of the floor at the time (if it was clean and shiny, oil would be difficult to see) and his concentration on remembering the cake mix price to report to the waiting customer, he did not discover the oil on the floor.
Even if the jury rejected Ross' testimony in its entirety, the jury could have inferred from Quave's testimony that inspection procedures were unreasonable because there were no established, written or consistent inspection procedures. Further, Ross' and Quave's testimony that everyone was responsible to notice dangerous spills is tantamount in reality to no one being individually responsible. Quave also testified that there were occasional problems with cooking oil bottle leakage or spillage.
It is plaintiff Welch's burden in this case to show that Winn-Dixie had constructive notice of the cooking oil spillage. Welch was not personally familiar with Winn-Dixie's inspection procedures; her only alternative to prove their inadequacy was to call Winn-Dixie personnel to testify. She proved that there were no written inspection procedures, no written documentation of the performance of inspections, and no company directives on a consistent inspection policy. These facts are strong evidence of the inadequacy and unreasonableness of Winn-Dixie's inspection procedures. As in Saucier, the jury may have inferred that the failure of Winn-Dixie to have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure revealed a lack of the statutorily required reasonable care on its part. The length of time a foreign substance is on the floor diminishes in relevance if the defendant merchant has no mechanism in place to discover such a hazard. In Oalmann, it was unnecessary to show precisely how long the foreign substance was on the floor because of the volume of K-Mart's business and the constant influx of customers, making it foreseeable that K-Mart should have known that the rain would cause the floor to become wet and slippery. Likewise, in this case it was unnecessary to show precisely how long the foreign substance was on the floor due to its nature as extremely slippery and hazardous and the lack of established consistent inspection procedures designed to discover such a dangerous condition.
In this case, as in Parker, the only evidence of a prior inspection was five to ten minutes before the accident. Further, in this case, the jury may have considered that the "price check" inspection did not constitute an inspection at all. It was well within the jury's purview to find that inspection inadequate, given the testimony and the evidence presented. If the inspection was inadequate, it was unreasonable, and the jury could have reasonably concluded that the oil existed on the floor for such a period of time that it would have been discovered if Winn-Dixie had exercised reasonable care, i.e. performed an adequate inspection.
The case at bar also bears similarities to pre-Kavlich jurisprudence. As in Fontanille, there was no continuing and definite form of cleanup and inspection shown; in fact, Ross' testimony showed that there was no continuing and definite form of cleanup and inspection. As in Estrade, the jury here may have concluded that Winn-Dixie was unreasonable in that it lacked a definite and systematic program for discovery of a foreign substance on the floor and Ross' testimony that he personally inspected the store every ten to fifteen minutes was insufficient to establish such a systematic inspection procedure.
In addition, the jury was shown a demonstration of oil poured out onto the floor. The jury also watched a videotape of the pertinent areas of the Winn-Dixie. The jury observed for itself just how easy or difficult it is to observe spilled cooking oil. The jury had the opportunity to observe the credibility of the witnesses. The jury had the opportunity to note the fact that spilled cooking oil is particularly slippery.
The jury performed its role as trier of fact properly and its conclusion is supported by the record, even though another trier of fact may have concluded differently, as demonstrated by the Court of Appeal opinion. After a thorough review of the record in this case, we find that the jury was not clearly wrong in finding that Winn-Dixie had "constructive *319 notice" of the presence of cooking oil on the floor. The facts in the record support the conclusion that the oil was on the floor for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The jury logically could have equated "reasonable care" with "adequate inspection" and concluded that Ross' "price check" inspection was neither adequate nor reasonable. The record supports the jury's implicit conclusion that Winn-Dixie had constructive notice of the cooking oil on the floor of the aisle because plaintiff Welch proved that the condition existed for such a period of time that it would have been discovered if Winn-Dixie had exercised reasonable care.

DECREE
For the foregoing reasons, we reverse the decision of the court of appeal and reinstate the judgment of the trial court.
REVERSED.
KIMBALL, J., dissents and assigns reasons.
VICTORY, J., dissents.
KIMBALL, Justice, dissenting.
Under La.R.S. 9:2800.6, as amended in 1990, a slip and fall plaintiff has the burden of proving that the defendant-merchant either created or had actual or constructive notice of the condition which caused his damage, and that the merchant failed to exercise reasonable care. In this case, Ms. Welch simply failed to offer any evidence showing that Winn-Dixie had notice, actual or constructive, of the cooking oil prior to her fall. In my opinion, Judge Shortess, writing for the court of appeal below, succinctly summarized plaintiff's offering on the issue of constructive notice, as follows:
Plaintiff contends the testimony of Ross was not credible. If we disregard his testimony, what has plaintiff proven? She has shown that a relatively large amount of cooking oil from an undeterminable source was on aisle three of defendant's store; that the oil was not visible to the casual observer but could be seen by one looking for hazards; that in the past defendant occasionally had problems with slow leaks in oil bottles, but oil which leaked onto the floor was also found on the shelves; that no oil was found on the shelves after plaintiff's accident; that defendant had no written policy regarding floor inspections, but it was the practice of the store managers to inspect the aisles every fifteen minutes; and that Ross had been in the vicinity five to ten minutes before the accident. This evidence does not prove actual or constructive notice or failure to exercise reasonable care.
Plaintiff also contends the jury could have believed Ross's testimony that he inspected the floor five minutes before the accident but disbelieved that the aisle was clean. Thus, plaintiff contends, the jury could have found Ross negligently failed to discover the oil. However, plaintiff presented not a scintilla of evidence that the oil was actually on the floor when Ross made his inspection. Plaintiff had the burden of proving defendant had actual or constructive notice. She could not do this simply by offering Ross's positive testimony that the hazard did not exist and then asking the jury to conclude it did exist because Ross lacked credibility.
Welch v. Winn-Dixie Louisiana, Inc., 92-2372, p. 9 (La.App. 1st Cir. 8/22/94), 645 So.2d 647, 651.
The majority, in reversing the court of appeal, places undue reliance on the fact that Winn-Dixie had no formal, written inspection procedure which was implemented on a company-wide basis. By ruling that a jury may infer lack of reasonable care on the part of a merchant from its failure to institute a "uniform, mandatory, non-discretionary, clean-up and safety procedure," the majority effectively shifts the burden to the merchant to prove that it acted reasonably. However, under the present version of La.R.S. 9:2800.6, the merchant is clearly not required to offer any evidence. Moreover, the focus in these cases is on the reasonableness of the actual inspection and clean-up efforts utilized by the merchant immediately prior to the pertinent accident, rather than whether or not the merchant had a uniform policy.
*320 While the burden of proof which the legislature has placed on slip and fall plaintiffs under La.R.S. 9:2800.6 is a difficult one to carry in many cases, that burden is not impossible to meet. As noted by the majority, and by the court of appeal below, the plaintiff in each of the following cases did indeed carry his or her burden of proving that the merchant had notice of the dangerous condition and failed to exercise reasonable care. In Parker v. Winn-Dixie Louisiana, Inc., 615 So.2d 378 (La.App. 5th Cir.1993), the plaintiff elicited testimony from one of defendant's employees that the store manager, who was supposed to conduct safety checks, had failed to do so for twenty to thirty minutes before the accident. In Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5th Cir.1993), the plaintiff showed that the spill occurred four or five feet from a counter where at least two of defendant's employees had a clear view of the aisle. In Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4th Cir.1993), the plaintiff proved defendant had constructive notice that the floor of the store's entrance was wet based on an accident report wherein the defendant acknowledged that it was raining on the day in question. In Treadaway v. Shoney's, Inc., 93-1688 (La.App. 4th Cir. 2/25/94), 633 So.2d 841, the plaintiff proved by her own testimony that defendant's employee created a hazard by removing a "wet floor" sign before the floor was completely dry. Finally, in Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993), the plaintiff showed that the store's assistant manager knew, from the angle of the produce shelf, that lemons often fell into the produce aisle, yet inspections of the store were conducted only once per hour.
In each of the cases cited above, the slip and fall plaintiff came forward with some positive evidence showing that the hazardous condition was either known by the merchant or existed for such a period of time that the merchant should have discovered its existence. In the instant case, however, Ms. Welch simply failed to offer any evidence that the cooking oil was on the floor for a period of time sufficient to place Winn-Dixie on notice of its existence.
For these reasons, I do not believe that the jury in the present case had a reasonable basis for finding liability on the part of Winn-Dixie under La.R.S. 9:2800.6. Accordingly, I respectfully dissent.
NOTES
[*] Judge Charles R. Lindsay, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis. Pursuant to Rule IV, Part 2, § 3, Justice Lemmon was not on the panel that heard and decided this case. See State v. Barras, 615 So.2d 285, 286 n. 1 (La.1993).
[1] Mr. Welch's loss of consortium claim was dismissed prior to trial.
[2] Ross admitted that the Accident Report states that the last inspection was performed about ten minutes before the accident, contrary to his testimony that he was in the aisle checking a price on cake mix and performing an inspection five minutes before the accident.
[3] Several photographs identified as Exhibits "P-1-A" through "P-1-RR" were introduced into evidence. There was no testimony regarding when these photographs were taken, although each has a date stamped on the back of January 13, 1992, almost nineteen months after the accident.
[4] There was no question by the Court of Appeal, and Winn-Dixie readily admitted, that plaintiff Welch slipped and fell in cooking oil and was injured, which leads to the conclusion that cooking oil was in fact on the floor when Welch slipped and fell.
[5] See Gonzales v. Winn-Dixie Louisiana, 326 So.2d 486 (La.1976); Brown v. Winn-Dixie Louisiana, 452 So.2d 685 (La.1984); and McCardie v. Wal-Mart Stores, 511 So.2d 1134 (La.1987).
[6] See Kavlich v. Kramer, 315 So.2d 282, 284-285 (La.1975).
[7] See Comment, Reapportioning the Burden of Uncertainty: Storekeeper Liability in the Self-Service Slip-and-Fall Case, 41 UCLA L.Rev. 861, 886 (1994).
[8] See Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App. 3rd Cir.1968); Jones v. W.T. Grant Company, 187 So.2d 470 (La.App. 3rd Cir.1966); and Peters v. Great Atlantic & Pacific Tea Company, 72 So.2d 562 (La.App. 2nd Cir. 1954).
[9] This discrepancy is relevant because it casts some doubt upon the accuracy of Ross' testimony. It was evident from the jury's conclusion that it accepted some parts but rejected other parts of Ross' testimony. This discrepancy is an example of why the jury may have found his testimony not to be totally credible.