691 So.2d 871 (1997)
Samuel TANNER, et ux., Plaintiffs-Appellants,
v.
BROOKSHIRE GROCERY COMPANY, Defendant-Appellee.
No. 29276-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
*872 Darrel D. Ryland, for Plaintiffs-Appellants.
James A. Mijalis, for Defendant-Appellee.
Before HIGHTOWER, WILLIAMS and CARAWAY, JJ.
CARAWAY, Judge.
In this slip and fall action, the plaintiffs, Samuel and Nessie Tanner, appeal a judgment rendered in favor of defendant, Brookshire Grocery Company. The trial court found that plaintiffs failed to prove that the merchant had actual or constructive notice of the dangerous condition, and that the evidence did not show that defendant failed to exercise reasonable care. For the following reasons, we affirm the ruling of the trial court.

Facts
On Wednesday, July 27, 1994, at approximately 6:10 p.m., Samuel and Nessie Tanner stopped at a Brookshire store in Shreveport, Louisiana, as they were beginning an automobile trip from Louisiana to California. The weather condition at the time was dry. Mrs. Tanner entered the store slightly ahead of her husband. After taking a few steps inside the store entrance, she slipped in a light brown, liquid substance, possibly tea, and fell to the floor, landing in a sitting position. Plaintiff was wearing leather sandals, and a skid mark was left extending from the small wet spot on the floor. Mr. Tanner helped his wife back to her feet. Steven Rigsby, a courtesy clerk/bagger who was at that moment re-entering the store following behind Mrs. Tanner, witnessed her fall from a distance of approximately eight to ten feet and went to her aid. Mr. Tanner informed the store manager about the accident while Rigsby cleaned up the liquid. The manager on duty, Steven McClure, spoke with the plaintiff and later filled out an accident report and photographed the accident site. The photograph showed the accident site to be located immediately off of the corner of the entryway mat which was partially shown in the picture.
The plaintiffs filed this action against the defendant, Brookshire Grocery Company, seeking to recover damages for injuries caused by Nessie Tanner's fall in the store. After a bench trial, the district court rendered judgment in favor of the defendant, finding that the plaintiffs failed to satisfy their burden of proving that the merchant either created or had actual or constructive notice of the dangerous condition, and that the evidence did not show that store employees failed to exercise reasonable care.
The plaintiffs appeal asserting that the trial court erred in finding that defendant did not have notice of the hazard and did not breach its duty to exercise reasonable care. They contend the defendant's inspection procedure is not reasonable because it depends *873 on employees detecting dangerous spills while performing other duties.

Applicable Law
A negligence action brought by a person against a merchant for damages resulting from injuries sustained in a fall is governed by La.R.S. 9:2800.6 (hereinafter "the Statute"). Accordingly, the plaintiff has the burden to prove that she slipped and fell due to a condition on the defendant's premises which presented an unreasonable risk of harm that was reasonably foreseeable, that defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence, and that defendant failed to exercise reasonable care. Welch v. Winn-Dixie La. Inc., 94-2331 (La. 5/22/95), 655 So.2d 309.
Subsection C(1) of the Statute provides as follows:
"`Constructive notice' means the condition existed for such a period of time that it would have been discovered had the merchant exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition."
Under the facts in Welch, the supreme court determined that the jury could have concluded that the merchant had constructive knowledge because "it lacked a definite and systematic program for discovery of a foreign substance on the floor." Id. at 318.
The determination of responsibility for a slip and fall on the merchant's premises requires an analysis for negligence. Fault is not based on strict liability. Simmons v. City of Monroe, 588 So.2d 1357 (La.App.2d Cir.1991). Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App.2d Cir.1993).
A trial court's findings of fact may not be set aside on appeal in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).

Discussion
Where the cause and time of the spill are unknown in a slip and fall case, the factfinder is required to draw inferences from various factors pertaining to the spill and the merchant's actions in an effort to determine whether the defendant's negligence is the most plausible explanation for the accident. Since fault is not based on strict liability, a spill, as in this instance, that is not shown to be caused by the storekeeper, but more likely caused by another patron, does not alone create liability. The plaintiff also must prove that the defendant breached the duty of reasonable inspection and care of the premises.
From our review of the record, we do not find that the trial court was clearly wrong or manifestly erroneous in choosing the inferences upon which it concluded that no negligence occurred. From the description and location of the spill, the court could reasonably conclude that the spill was not easily seen and probably had been on the floor only a short period of time. The testimony of Steven Rigsby described the liquid as light brown in color, and the court concluded that this would have caused the liquid to blend with the cream colored, brown speckled floor. Rigsby also emphasized the small size of the spill, two or three inches around, as the reason that it would not have been easily noticed by either the plaintiff or the store personnel.
A very significant fact in this case was the location of the spill at the front entrance to the store. The testimony indicated that the 6:10 p.m. accident occurred during the store's heaviest business period between four and seven p.m. The location of the spill was just beyond the entrance mat in the area between *874 the store office and the racks of shopping carts. No items for sale were displayed along that initial entry path into the store. Rigsby and the store managers testified that the four courtesy clerks on duty at the time would have been continuously returning empty shopping carts to these racks after having assisted patrons in taking groceries to their automobiles. McClure testified that with his involvement up front in the store near the office, he would at times involve himself in sacking and delivering the groceries. The courtesy clerks' procedure of returning empty shopping carts to their racks would have required them to constantly traverse the area in question. Likewise, most new customers entering the store would, like the plaintiff, take the route in question, stopping to obtain a shopping cart.
In the midst of this high traffic area, the small spill was not described as one which had been trampled and smeared under the feet of other patrons or by the wheels of the shopping carts. By contrast, the witnesses described the spill as still very much contained, not splattered or smeared, with only the skid mark of Mrs. Tanner's foot running through it. Thus, even before reaching the important inquiry regarding the timeliness and thoroughness of the store's inspection procedure, the inferences gathered from the size and location of this spill could justify the trial court's view that the spill had only been on the floor a short period of time.[1] In the circumstantial sphere of spillage, such a spill, not likely caused by the merchant and inferentially shown to have most likely arisen immediately prior to the accident, is the result of the negligence of a third party and one which the merchant probably could not have discovered.
Regarding the evidence of the defendant's inspection procedure, the defendant showed that it had a store-wide inspection procedure in place requiring the logging of the inspection by the store manager on a time punch card and that the last entry on the card was at 4:34 p.m., approximately one and one-half hours prior to the accident. Recognizing that such a time interval between inspections of the store's entrance would be ineffective for detecting substances which the public might track in or spill, the defendant also presented the testimony of two courtesy clerks and two store managers discussing their review of the entry area and their training regarding the detection and prompt removal of substances on the floor. All four of these employees, including Rigsby and McClure, were on the job at the time of or within the hour preceding the accident and had traversed the area numerous times inspecting the entry mat and returning the shopping carts to their racks. The trial court concluded that "the area is mopped approximately three times daily along with constant inspections by management personnel and courtesy clerks."
Citing Welch v. Winn-Dixie, supra, the plaintiffs argue that defendant had no definite and systematic inspection procedure for the front entry and that with "everyone ... responsible to notice dangerous spills" it was "tantamount in reality to no one being individually responsible." Welch, supra, at 318. The Welch slip and fall occurred in an aisle of the large supermarket. Although, five minutes prior to the accident, the store manager had performed a price check on an item within five to fifteen feet of the cooking oil spill, he had not walked over the area of the floor where the clear oil spill was apparently difficult to see. No established, written or consistent inspection procedure was demonstrated in Welch allowing the jury to infer that the oil spill had gone undetected for an unreasonable amount of time so that the defendant had constructive knowledge. Unlike this case, the location and condition of the spill in Welch raised no inferences of how long the oil had been on the floor.
There is a different mix of inferences raised in this case, as with every case, by the size and location of the spill and by the *875 employees' procedure which required their actual and continuous traversal of the area in question. Such procedure served in this instance as an adequate, if not better, practice for detecting spills when compared to inspections at otherwise fixed time intervals. Though the courtesy clerks and managers were greeting the public in the entry area or assisting them to their cars with groceries, they were also repeatedly walking through the area in question without the distraction of attending to customer needs. Had the spillage gone unnoticed for an unreasonably long time period, their movement in and out of the entry area would have trampled such a liquid spill which they were on guard to detect.
In the final analysis, our affirmation of the factfinder's weighing of the reasonable and competing inferences which can be drawn from this incident is in harmony with Welch where the supreme court, in an admittedly close case, refused to second-guess the jury by choosing and weighing other inferences. While we agree with plaintiffs that a spill at the entry of a store should be found quickly, the law does not mandate discovery absolutely.

Conclusion
The trial court, in searching for clues to the unknown time interval between the spill and the accident, was not manifestly erroneous in his conclusion that this small and inconspicuous spill had probably just occurred based on the inferences which he could draw from testimony presented. Accordingly, the trial court's judgment dismissing the plaintiffs' claims is affirmed. The costs of this appeal are assessed to appellants.
AFFIRMED.
WILLIAMS, J., dissents with written reasons.
WILLIAMS, Judge, dissenting.
I respectfully dissent.
The evidence established that liquid on the floor of defendant's store created a hazardous condition. Plaintiff slipped in the substance and fell. The majority states that the trial court could reasonably infer that the spill had probably been on the floor for only a short period of time. However, the facts in the record do not support an inference that the spill occurred just briefly before the accident, because the defendant had not inspected the area for at least one and one-half hours prior to plaintiff's fall. Whether that inspection had even occurred was questionable under the circumstances. Michael Sweeney, who was the store director on the date of the accident, testified that prior to plaintiff's fall, he had inspected the store at 4:34 p.m., as indicated on the time card. However, at trial he could not specifically remember walking the floor at that time and acknowledged that he had not initialed the card as required by store policy.
Trial testimony shows that the defendant failed to perform an adequate inspection of the store's entrance area during the hour before plaintiff's fall. Stephen McClure was the manager on duty at the time of the accident. Although McClure stated that he walked past the accident area several times after 5:00 p.m. and did not see anything on the floor, he was unable to specify a particular time that he actually made a visual inspection for substances. William Aldridge, one of the clerks on duty at the time of the accident, did not testify that he had inspected the floor for spills prior to plaintiff's fall.
Another store clerk, Steven Rigsby, testified by deposition. Contrary to the trial court's finding in its "Reasons for Judgment," Rigsby did not say that clerks perform constant inspections. Rather, he testified that courtesy clerks "don't have to go around inspecting" the floor for spills, but were expected to generally be on the lookout for problems and to clean up any liquids that they noticed. Rigsby stated that he was working near the accident area, but he could not say whether he would have noticed an existing spill in the normal course of his duties, which required him to focus on the customers.
Rigsby did not know how long the liquid was present on the floor and said that he did not see any buggy tracks through the puddle. The majority grasps at this purported lack of *876 wheel marks or smearing as proof to justify the trial court's finding that the spill was recent. However, Rigsby did not observe the liquid prior to plaintiff's fall. Thus, he could not know whether there were tracks through the spill before plaintiff fell.
The facts show that liquid was present on the floor, which was within the view of the store clerks. Although the defendant had an established policy for safety inspections, there is no evidence, other than a vague requirement for employees to watch out for spills, that the accident scene had been specifically inspected to detect a dangerous condition during the hour before plaintiff fell. The defendant was in a superior position to maintain safe floor conditions. Witness testimony established the probability that the liquid was present within view of defendant's employees prior to the accident for a sufficient period of time that it would have been discovered had the merchant exercised reasonable care.
Under these circumstances, the record shows that the plaintiff has satisfied her burden of proof under LSA-R.S. 9:2800.6. Thus, the trial court was clearly wrong in dismissing the plaintiff's action. I would reverse and render judgment in Mrs. Tanner's favor, awarding her both general damages and past medical expenses.
NOTES
[1] Though the trial court also found "significant" Mrs. Tanner's testimony that the liquid felt "warm," we did not view that portion of her testimony as indicating that the liquid was still hot when she touched it but only lukewarm and clearly not cold. Nevertheless, since the transcript is not unambiguous on this point, a warmer than normal temperature for the liquid might have been found by the trial court and would certainly raise a strong inference that would justify the view that the spill had just occurred.