JjPEATROSS, J.
In this trip-and-fall action, Defendant, Dillard Department Stores, Inc. (“Dillard’s”), appeals a judgment of the trial court in favor of Plaintiff, Lueindy Trotter. Finding that Plaintiff failed to meet her burden of proof at trial, we reverse the trial court’s judgment and dismiss Plaintiffs claim against Dillard’s.
FACTS
On August 22, 1996, at approximately 4:15 p.m., an employee of Dillard’s, Sheila Warren, witnessed Plaintiff appear to lean over and fall in her department. Since she could not see Plaintiffs feet at the time of the fall, Ms. Warren was unsure of what caused Plaintiff to fall. Plaintiff later claimed that her feet became tangled in the straps of a backpack purse which was on the floor.
During trial, Plaintiff testified that she was shopping that day with a female friend, Carolyn Herceles, her son’s girlfriend, Angela Tate, and Ms. Tate’s two toddler children, a girl and a boy. Although Plaintiff testified that she was holding the girl toddler’s hand at all times, even when Plaintiff fell, this testimony was later disregarded by the court in light of the testimony of other witnesses and what the trial court referred to as Plaintiffs “medical problems” which impaired her recollection of the incident. Plaintiff was adamant in her testimony that the little girl (“Tate child”) did not engage in horseplay and did not pull any backpack purses off of the display stand.
Ms. Warren testified that she saw the group enter the junior department where she was working, asked if she could assist them and helped Ms. Tate find a clothing item to try on. After Ms. Tate decided not to purchase the item, she returned it to Ms. Warren, who then went back to her other job duties near her cashier stand or “wraparound,” as it is more commonly known. Shortly thereafter, Ms. Warren noticed that the Tate child was pulling backpack purses down to the floor from a display stand referred to as a “bunker.” This bunker was an open Lshelf, flat top, rectangular shaped display with three shelves on both sides. Ms. Warren stated that she immediately went over to where the Tate child was and picked up all of the backpacks and replaced them on the bunker. At this time, Ms. Tate noticed what had happened, yelled to her child to stop and began walking in the child’s direction to retrieve her. Once Ms. Warren saw the child’s mother coming to get her, she inspected the area around both sides of the bunker to ensure that no more backpacks were on the floor and then returned to her duties at the wraparound. Ms. Warren *1026 was adamant in her testimony that she had picked up all of the backpack purses and that nothing was left on the floor in that area. No more than one to two minutes passed before Ms. Tate had custody of her child and left the immediate area, walking through the area where Plaintiff alleges she tripped on the backpack purse. Within three or four minutes, Ms. Warren noticed Plaintiff “leaning over,” and then hit a table and fall to the floor. Ms. Warren candidly admitted that she could not refute Plaintiffs claim that a backpack purse caused Plaintiff to fall because she could not see Plaintiffs feet at the time of the fall.
The factual mystery, however, on which this record sheds very little light, is how and when the backpack purse, which allegedly caused Plaintiffs fall, got on the floor.[1] Plaintiff testified that she did not see the backpack purse on the floor prior to becoming entangled in it. In addition to her trial testimony, Plaintiffs deposition testimony was admitted at trial. In her deposition, Plaintiff testified that she had no information regarding how the backpack purse got on the floor.
|3On cross-examination at trial, Plaintiff admitted that she has been receiving social security disability payments since 1987 for a diagnosed chemical imbalance. She has been treated for the imbalance at the Shreveport Mental Health Unit and takes either Prozac or Paxil for the condition. Plaintiff is also an insulin dependant diabetic. At trial, however, she testified that she had been taken off of insulin three months prior to the incident. Contrary to this testimony, Plaintiff testified in her deposition that she had given herself an insulin shot at 7:00 a.m. the morning of the incident. She denied that she had ever become dizzy as a result of the diabetes and testified that she ate a hotdog while at the mall before the incident. Both Dillard’s and the paramedic’s reports, however, note that Plaintiff stated to them that she had not eaten that day.
Cross-examination of Plaintiff also revealed a litigious history involving falls and other accidents. Plaintiff initially denied that she had filed any previous law suits, other than the instant suit and one against Kroger for a slip-and-fall, until Plaintiff was presented with evidence of her filing of other suits. The evidence showed that in 1988, Plaintiff filed suit against the State of Louisiana and the Shreveport Mental Health Unit alleging that she had slipped in a puddle of water on the floor and fallen, injuring her right wrist, knee and foot. Following trial of the matter, the trial court entered a judgment for the defendants, which was later affirmed by this court on appeal in Trotter v. State of Louisiana, No. 28, 674-CA. In 1994, Plaintiff was involved in the slip-and-fall accident at Kroger that she had admitted to, which she alleged caused a back injury. According to Plaintiff, Kroger “paid [her] off.” Nine months after that incident, Plaintiff filed a suit on May 30, 1997, against her apartment complex alleging that on April 4, 1997, a portion of the ceiling outside her apartment door collapsed, hitting her in the head rendering her unconscious. In addition to a concussion, Plaintiff alleged neck, shoulder and back injuries. The suit was dismissed on February 20, 1998. The instant suit was filed August 18, 1997; and, |4as a result of the trip-and-fall, Plaintiff is alleging neck, shoulder and back injuries as well as a laceration to her leg.
Plaintiff also initially denied seeking any medical treatment after her last chiropractic visit on October 21, 1996, as a result of *1027 the instant incident. She later admitted that she sought medical treatment for her neck and back as a result of the April 4, 1997 incident at her apartment.
ACTION OF THE TRIAL COURT
The trial court made the following factual findings and conclusions: 1) Plaintiff was not a credible witness because of her medical problems, but that she was not trying to deceive the court or testify untruthfully; 2) it was not clear from the evidence how Plaintiff fell, other than her testimony that her feet got tangled up in something; 3) Ms. Warren testified that she would not dispute that it was the purse that caused Plaintiffs fall and 4) “more likely than not,” Plaintiff fell over or tripped over the purse.
On review, we find Ms. Warren’s testimony to be credible, as did the trial court, regarding the fact that the Tate child pulled some or all of the backpack purses off the display. Ricky Farris, Dillard’s security guard, testified that the Tate child was running around and pulling things off of racks and displays even after Plaintiff fell and, in fact, pulled his camera off the wraparound. Despite Ms. Warren’s testimony, however, that she picked up all the purses and checked the area, the trial court found, “what happened was the child was strewing purses all over the place probably and Ms. Warren just missed one of the purses, didn’t see it.” The trial court also found that such a purse on the floor creates a risk of harm and it is foreseeable that someone will trip over it. In addressing whether Dillard’s created this condition or had actual or constructive notice of it as required by statute, the trial court stated:
U think there was constructive notice, that [Ms. Warren] should have known that the purses were there. It’s sort of analogous, I would think, to a store employee that sees a spill in a grocery store and cleans up all of it but a little bit and somebody then slips on the little bit that didn’t get cleaned up. I think there was constructive notice. That’s defined in the statute as saying the claimant has proven the condition existed for such a period of time it would have discovered if the merchant exercised reasonable care. I think the merchant’s employee did discover the mess, the purses, and just neglected to pick one of them up.
In assigning comparative fault, the trial court found the child’s mother, Angela Tate, 50 percent responsible for the accident for failing to supervise her child. Dillard’s was found to be 50 percent at fault also. No comparative fault was assessed to Plaintiff and she was awarded $1,308.38 in special damages and $1,000 in general damages.
DISCUSSION
Dillard’s assigns as error that the trial court failed to apply the burden of proof standard required by La. R.S. 9:2800.6, as interpreted by the supreme court in White v. Wal-Mart Stores, Inc. 97-0393 (La.9/9/97), 699 So.2d 1081. We find merit to this assignment.- In the alternative, Dillard’s urges error in the failure to find Plaintiff comparatively negligent in causing her accident. Plaintiff did not file a brief on appeal.
The pertinent law governing this accident is the most recent version of La. R.S. 9:2800.6 which states:
A. A merchant owes a duty' to. persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the *1028 burden of proving, in addition to all other elements of his cause of action, all of the following:
|(¶(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known of the condition.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
In order to recover, Plaintiff is taxed with the burden to establish that: a condition presenting an unreasonable risk of harm existed and that risk of harm was reasonably foreseeable; that prior to her fall, Dillard’s either (1) created or (2) had actual knowledge or (3) constructive knowledge of the condition that caused the fall; and that Dillard’s failed to exercise reasonable care. Davis v. Wal-Mart Stores, Inc., 31,542 (La. App 2d Cir. 1/22/99), 726 So.2d 1101.
In White, supra, the supreme court interpreted a prior version of La. R.S. 9:2800.6. For the purposes of the issues presented herein, however, the pertinent language set forth in subsections B and C has not changed. In reversing the court of appeal, the supreme court in White, supra, stated four important rules |7or principles that arose from its interpretation of La. R.S. 9:2800.6(1) the burden of proof cannot be shifted to the defendant to prove a negative; (2) the plaintiff must make a positive showing that the condition which caused her fall existed prior to the fall; (3) the absence of evidence regarding notice is fatal to a plaintiffs claim; and (4) the trial court should not engage in speculation or assumption to “fill in” the eviden-tiary gaps when reaching a decision about the defendant’s notice.
Dillard’s argues that Plaintiff failed to prove Dillard’s had notice of the existence of the purse on the floor prior to the fall. Although there is no bright line time period, a claimant must show that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. La. R.S. 9:2800.6(0(2); White, supra. Ms. Warren was the only witness who testified that she saw the Tate child pulling the purses off the bunker. Both Plaintiff and the child’s mother, Ms. Tate, denied that this occurred. Ms. Warren further testified that she had picked up all the purses, that she inspected the area, and that there were no additional purses on the floor when she left the area just a few minutes before the fall. Neither Plaintiff nor Ms. Tate saw the purse on the floor prior to the fall despite the fact *1029 that both walked through, over and around that area immediately preceding the fall. From this testimony, the trial court makes an assumption that is not supported by the evidence, i.e., that Ms. Warren failed to pick up one of the backpack purses after the Tate child pulled them down. Such speculation is simply inconsistent with the clear wording of La. R.S. 9:2800.6 which requires a positive showing that the condition which caused the fall was present for some period of time prior to the fall. The trial court’s conclusion is also inconsistent with its finding that Ms. Warren’s testimony was credible. There is no reasonable factual basis in the record before us to support the conclusion by the trial court that Ms. Warren failed to pick up one of the backpack purses.
| sThe burden of proof cannot be shifted to Dillard’s to prove a negative, i.e., the absence of a purse on the floor. White, supra at 1084; Vergin v. McDonald’s Restaurants of Louisiana, 97-2471 (La.App. 1st Cir.11/6/98), 722 So.2d 78, writ denied, 98-2996 (La.1/29/99), 736 So.2d 837. In light of Ms. Warren’s adamant denial that she failed to pick up all of the purses, counsel asked her to speculate on how the purse that was on the floor after the fall got there. As stated in White, supra, at 1086, “the absence of evidence can not support the claimant’s cause of action.”
The argument could be made that Ms. Warren failed to exercise reasonable care by moving away from the bunker before Ms. Tate actually had her daughter by the hand and left the area. To require Ms. Warren to do any more than she did do to remedy the actions of the toddler would be to require her to be the insurer of the safety of every shopper in the vicinity of the toddler. The law does not require this of Dillard’s or its employees. Tanner v. Brookshire Grocery Co., 29,276 (La.App.2d Cir.4/2/97), 691 So.2d 871.
Plaintiffs failure to present positive proof that the purse that caused her fall existed for some time prior to the accident is fatal to her claim. A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Based on this record, we find the trial court’s finding that Plaintiff met the required burden of proof to be clearly wrong. Having determined that Plaintiff failed to prove actual or constructive notice as required by La. R.S. 9:2800.6(B)(2), it is not necessary to address Dillard’s contention that the trial court erred in not assessing Plaintiff with comparative fault.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed. Plaintiffs, Lucindy Trotter’s, claims against Defendant, Dillard Department Stores, Inc., are dismissed. Costs of this appeal are assessed to Plaintiff.
REVERSED.

. Plaintiff testified that she never let go of the Tate child’s hand even, when she fell. In addition, Plaintiff first testified that the security guard, Ricky Farris, removed the tangled backpack purse from her legs. Plaintiff then testified that the backpack purse remained tangled around her legs until the paramedics removed it. Mr. Farris gave no testimony regarding the untangling of the backpack purse; but the photographs of the immediate scene taken by Mr. Farris showed Plaintiff lying on the floor with the backpack purse some three to four feet away from her.