I iMURRAY, Justice,
concurring.
I disagree with the majority’s conclusion that the determination that Dr. Ryan deviated from the standard of care was manifestly erroneous. All medical experts agreed that Septra was an appropriate medication for the symptoms with which Ms. Jordan presented. All agreed that Dr. Ryan’s advice to Ms. Jordan on December 5, 1987, to continue the *1037 Septra and call him on Monday if her condition did not improve, was appropriate and within the standard of care. All agreed that it was not malpractice for Dr. Ryan to fail to diagnose Stevens-Johnson syndrome during the time that Ms. Jordan was under his care. All agreed that Septra should have been discontinued on December 9, 1987, as it was. However, Dr. Wade, a board certified gynecologist, testified that in his opinion, it-was a deviation from the standard of care for Dr. Ryan not to have seen Ms. Jordan when she telephoned him on Monday, September 7, 1987. Although the other medical witnesses who testified did not share this opinion, the jury evidently made a credibility call and chose to accept Dr. Wade’s testimony over that of the other medical experts. While this panel might have reached a different conclusion, it is not our function to substitute our judgment for that of the trier of fact. Welch v. Winn-Dixie Louisiana, Inc., 94-2331, p. 14 (La.5/22/95), 655 So.2d 309, 316.
However, Dr. Wade did not testify that the standard of care would have required that Septra be discontinued had Ms. Jordan been seen on December 7. In fact, his testimony suggests that the non-specific symptoms that Ms. Jordan 12described on that date, without the “hives” that were present on December 9, would not necessarily have led to the conclusion that Ms. Jordan was having an allergic reaction.
Even had Dr. Ryan seen Ms. Jordan on December 7 and discontinued the medication at that time, there was no evidence to support the conclusion that Ms. Jordan’s condition would have been any less severe. The experts in Stevens-Johnson syndrome agreed that there is no treatment that is known to modify the course of the disease. Dr. Rhoades, the allergist who treated Ms. Jordan, testified that because the illness presents a serious situation, steroids are given to patients with Stevens-Johnson, but the one study of which he was aware suggests that the use of steroids does not alter the outcome.
Therefore, because the evidence does not support the conclusion that plaintiffs have borne their burden of proving that Dr. Ryan’s deviation from the standard of care, his failure to see Ms. Jordan on December 7, caused the injury Ms. Jordan sustained, I concur in the reversal of the judgment.