657 So.2d 1327 (1995)
Quincy STEWART
v.
The GREAT ATLANTIC AND PACIFIC TEA COMPANY, d/b/a A & P Food Store.
No. 94-CA-1592.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1995.
Rehearing Denied August 18, 1995.
*1328 J. Paul Demarest, Angela C. Imbornone, Michelle R. Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, for plaintiff-appellant.
Robert E. Peyton, Elizabeth S. Cordes, Christovich & Kearney, New Orleans, for defendant-appellee.
Before LOBRANO, WALTZER and MURRY, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
Plaintiff, Quincy Stewart, appeals from the judgment rendered after a trial on the merits to the trial court judge dismissing his suit against The Great Atlantic and Pacific Tea Company (A & P) for damages allegedly caused when he slipped and fell on a banana at an A & P food store. We find no error in the trial court's judgment and affirm.

STATEMENT OF FACTS
Stewart and a female companion, Elaine Joseph, were shopping in the produce department of a grocery store operated by A & P at 3612 Carrollton Avenue on 11 August 1992 at approximately 5:30 p.m. when he slipped on a partially eaten banana and fell. Stewart claims that in connection with his fall, his shopping basket fell on top of him.
The store co-manager, James E. Patterson, Jr., testified that he had passed the accident site at about 5:20 p.m., on his way to the rest room, and had glanced at the produce aisle and did not see any produce on the floor. He testified that when he was on duty, as he was on the day of the accident, it was his procedure, after 4:00 p.m., to go through the produce area about ten or twenty minutes out of each hour. At the time of the accident, the store's security guard was at the front of the store and did not witness the accident.
Joseph advised Patterson of the accident, and Patterson went to the produce aisle where he saw Stewart sitting and holding his back. Patterson asked Stewart if he needed an ambulance, but Stewart left the store with Joseph.

FIRST ASSIGNMENT OF ERROR: EXCLUSION OF VIDEOTAPES AND SUPPORTING TESTIMONY
Joseph Micelli, a private investigator engaged by Stewart on 15 October 1993, made videotapes at the A & P store on 30 October 1993, fourteen months after the accident. On 7 June 1993, A & P propounded interrogatories to Stewart seeking the identity of witnesses having information material to the issues in the case. Micelli was not identified to A & P until 6 May 1994, eleven days prior to trial. The videotape was not made available to A & P until 12 May 1994, and Micelli was not made available for deposition until 16 May 1994, the day before the trial.
On proffer, Micelli testified that he conducted "inspections" of the A & P store on 28 October 1993, 29 October 1993, 30 October 1993, 6 May 1994, 10 May 1994 and 11 May 1994. He made videotapes of the store on 30 October 1993. He admitted that he did not know if the tape depicted conditions and product/display configurations in the store on the day of the accident, and testified, "I do not know what the conditions were in the store on the day of the accident."
The trial court excluded Micelli's testimony and his videotapes, finding they were irrelevant. Stewart contends that the excluded *1329 evidence provides proof of A & P inspection and housekeeping policies, and could discredit Patterson's testimony. We disagree.
Patterson testified that the condition of the store at the time of the videotaping did not depict the condition of the store on the day of the accident, and Micelli's proffered testimony does not contradict him.
In order to prevail on a negligence claim under La.C.C. articles 2315 and 2316 a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element.) Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991).
Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any law-statutory, jurisprudential or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.1993).
A & P's duty to its customers is defined as a matter of law in La.R.S. 9:2800.6. Stewart's statutory burden of proving violation of that duty is defined in paragraph B of the statute:
1. The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
3. The merchant failed to exercise reasonable care.
"Constructive notice" is defined in paragraph C as meaning that "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care."
The relevant issue is not what A & P's policy was in 1992 or 1993 or 1994, but whether the offending banana had been on the floor of the produce aisle on the day of the accident for such a period of time that it would have been discovered if the merchant had exercised reasonable care. Micelli's testimony and videotapes, by his own admission, did not bear upon the issue of violation of A & P's duty. Neither does the excluded evidence touch upon any of the testimony given by Patterson, or upon his reputation for honesty. It would not serve to sustain Stewart's burden of proving his case and was properly excluded.

SECOND ASSIGNMENT OF ERROR: FAILURE TO APPLY ADVERSE PRESUMPTION WHEN A & P DID NOT CALL ITS SECURITY GUARD AS A WITNESS
At the time of the accident, an A & P security guard was stationed at the front of the store, and did not witness the accident that occurred in the produce aisle. He had no duty to inspect the produce aisle. Stewart contends that the trial court committed reversible error in failing to apply the presumption that the guard's testimony, had he been called as a witness, would have been adverse to A & P's interest.
The purpose of the presumption is that "a court may consider the fact that a party did not call a witness, available only to that party, with knowledge of facts not testified to by any other witness, which are pertinent to the case. Once a party makes a showing of this, and the other party does not produce a reasonable explanation for its failure to call that witness, the court may presume that the witness' testimony would have been unfavorable." Gurley v. Schwegmann Supermarkets, 617 So.2d 41, 44 (La.App. 4th Cir.1993). (Emphasis added.)
In order to invoke the adverse presumption, Stewart must show that the guard had *1330 peculiar knowledge of material facts pertinent to the case, was a key witness who was subpoenaed but was not called to testify, or was a material witness not available to Stewart. Gurley v. Schwegmann Supermarkets, 617 So.2d at 43. This Stewart failed to do.
A & P did not call this guard as a witness, since his only connection with the case was that he was called over after the accident to take one of three pictures taken of the accident scene. The guard was not subpoenaed by A & P. Stewart did not show that the guard was a material witness. Likewise, Stewart has not shown that he was unable through active participation in the discovery process to identify and interrogate the guard to satisfy the concerns raised in brief that the guard could have "possible" connections with the case. Unlike the uncalled witness in Gurley, the guard was not an eyewitness to the accident. We do not find that the guard's testimony falls within the guidelines set out in Gurley, supra, and find no error in the trial court's decision not to apply the adverse presumption.

THIRD AND FOURTH ASSIGNMENTS OF ERROR: PLAINTIFF SUSTAINED HIS BURDEN OF PROVING CONSTRUCTIVE OR ACTUAL NOTICE OF THE CONDITION
A trial court's determination of whether a merchant had actual or constructive notice of a condition creating an unreasonable risk of harm to its customers is a factual finding which may not be set aside absent a showing of manifest error. Oalmann v. K-Mart Corp., 630 So.2d 911, 914 (La.App. 4th Cir.1993), writ denied 94-0244 (La. 3/18/94), 634 So.2d 859. The manifest error rule does not allow this court to reverse the trial court's judgment in the absence of manifest error or unless the trier of fact is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
We recognize that although deference to the factfinder should be accorded, as the foregoing jurisprudence suggests, nonetheless this Court has a constitutional duty to review facts. This Court may not merely decide if we would have found the facts of the case differently. Rather, notwithstanding the belief that we might have decided it differently, we are mandated to affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because of this constitutional function, we have reviewed the record below in exhaustive detail, and have determined that the trial court's verdict was not clearly wrong based on the evidence, nor is it clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La. 7/5/94) 639 So.2d 216, 221.
The trial court in its reasons for judgment properly stated the applicable law, citing plaintiff's burden of proof under La.R.S. 9:2800.6(B). The statute represents an emphatic turning away from the prior generous standard of proof in slip and fall personal *1331 injury cases. While this burden of proof is, indeed, strict, our legislature has spoken and we are constrained, as was the trial court, to require compliance. The trial court found as a matter of fact, based upon the testimony of the witnesses, having evaluated the testimony of Stewart, Patterson and Joseph concerning the occurrence of the accident and the condition of the floor of the produce aisle, that "plaintiff failed to prove that either A & P or its employees had notice of the condition that caused plaintiff's fall." Our review of the record does not show that this finding was manifestly erroneous or clearly wrong, but rather that it is supported by Patterson's testimony that he had passed through the aisle within a quarter hour of the accident and did not see a banana on the floor. The trier of fact determined that under the particular facts of this case, this length of time did not create a condition of constructive notice within the meaning of the statute. We cannot say that this determination was manifestly erroneous or clearly wrong.
Neither the Oalmann case nor Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5th Cir.1993), cited by Stewart in brief, requires reversal of the trial court's judgment. Mrs. Oalmann's accident occurred on a rainy day, and the trial court found that K-Mart had actual knowledge of the weather conditions and should have known that the rain would cause the floor where the accident occurred to be slippery. The court of appeal affirmed the trial court's finding that the accumulation of water at the entrance existed for such a time that K-Mart should have discovered the danger. There was no evidence in the instant case that banana peels had littered the produce aisle for a similar length of time nor under conditions similar to the "rainy day" that produced K-Mart's constructive knowledge. In Cobb, the accident happened "between 4 and 5 feet from the pharmacy counter where at least 2 employees had a clear view of the aisle on which plaintiff slipped on the spilled popcorn.... [E]ither the employees failed to notice the popcorn on the floor, 4 to 5 feet in front of them, which they should have noticed, or they did nothing about it after noticing it." Cobb v. Wal-Mart Stores, Inc., 624 So.2d at 7. Stewart has not shown that the banana was visible to any A & P employee, and Patterson specifically testified that he passed through the aisle no less then ten and no more than 30 minutes before the accident and saw no banana on the floor. Cobb does not require reversal, since its facts are not apposite to the instant case.

FIFTH AND SIXTH ASSIGNMENTS OF ERROR: PROOF OF UNREASONABLE RISK OF HARM, FAILURE TO EXERCISE REASONABLE CARE AND DAMAGES
In light of our disposition of the previous assignments of error, these assignments are moot.
AFFIRMED.