JiDOUCET, Chief Judge.
Plaintiff, Leon Delahoussaye, appeals a judgment of the trial court dismissing his suit against defendant, Delchamps, Inc. (Del-champs), for damages he allegedly sustained in a slip and fall accident on January 13, 1994, in defendant’s New Iberia store. We affirm.
PLAINTIFF’S BURDEN OF PROOF
In ruling for defendant, the trial judge found that plaintiff had failed to carry his burden of proof. Recently, this court had occasion to review the burden of proof the plaintiff in a slip and fall case had to carry prior to the 1996 amendments of the ^governing statutes. In Alexander v. Wal-Mart Stores, Inc., 96-1598 pp. 4-5 (La.App. 3 Cir. 4/2/97); 692 So.2d 1313, 1314-15, we observed the following:
The application of La.R.S. 9:2800.6, as it was written at the time of plaintiffs accident, was recently discussed by this court in the case of Broussard v. Wal-Mart Stores, Inc., 96-513, p. 5 (La.App. 3 Cir. 11/6/96); [682] So.2d [894], wherein we stated:
BURDEN OF PROOF
Wal-Mart maintains that the trial court erred in concluding that the Broussards met their burden of proof as provided in La.R.S. 9:2800.6. Specifically, Wal-Mart contends that the trial court erred in finding it had constructive notice of the spill and that its procedures employed for detecting floor hazards were not reasonable under the circumstances.
Plaintiffs’ burden of proof in this case is governed by La.R.S. 9:2800.6 which, at the time of Anna’s accident, provided:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
*869 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition Uwhich caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
“Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2696.
The applicable pre-May 1, 1996 version of the statute is “decidedly pro-defendant.” Welch v. Winn-Dixie of Louisiana, Inc., 94-2331, p. 9 (La.5/22/95); 655 So.2d 309, 314. It places a “strict burden” on slip and fall plaintiffs to prove all of the elements listed therein. Stevens, 664 So.2d at 1210.
In Welch, 655 So.2d 309, plaintiff slipped and fell in cooking oil on the aisle floor of defendant’s store. The supreme court considered plaintiffs burden with regard to defendant’s constructive notice of the hazard, e.g., that it was difficult if not impossible for a plaintiff to prove that the condition existed for such a period of time that it would have been discovered had the merchant exercised reasonable care. The supreme court concluded that, when a plaintiff proves that the merchant does not have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure, the fact-finder may reasonably infer that this failure revealed a lack of reasonable care on the merchant’s part. “The length of time a foreign substance is on the floor diminishes in relevance if the defendant merchant has no mechanism in place to discover such a hazard.” Id. at 318.
JJDISCUSSION OF THE RECORD
The record reveals that Mr. Delahoussaye fell at approximately 9:50 A.M. in the school supply aisle of the Delchamps store on Admiral Doyle Drive in New Iberia. No one witnessed the accident. Mr. Delahoussaye, who is eighty years old, could shed little light on the mishap. He remembers walking down the aisle, slipping, and then regaining consciousness in the hospital. A banana peel was found near his feet in the store. However, there was testimony from Delchamps’ employees that they found no evidence of a banana “skid” mark on the floor or any banana residue on Mr. Delahoussaye’s shoes or clothes. Further, testimony established that the produce section and the school supply aisle are approximately 100 feet from each other.
Delchamps’ management personnel established that each morning the store was mopped and an aisle by aisle inspection was made by the manager on duty. Thereafter, throughout the day, one of the managers made a perimeter walk each hour looking for hazards and other possible problems. A perimeter walk consisted of the manager walking down the main aisles on the outside perimeter of the store and looking down each cross aisle as the walk progressed. Ken Boyer, the store manager, testified that he had completed such a walk just a few minutes before the plaintiff fell. He stated that when he came to the intersection of the main rear aisle and the school supply aisle, at approximately 9:45 A.M., his inspection of the school supply aisle revealed nothing on the floor of that aisle. Mr. Boyer testified that he has 20/20 eyesight and that he can spot an M & M on the floor the length of an aisle distant. He noted that the floor of the store is white and that something the size and color of a yellow and black banana peel would easily be spotted.
|5Perhaps the most damaging testimony to plaintiffs case came from his own expert, Dr. *870 David Picha, a professor of horticulture at L.S.U. in Baton Rouge. Dr. Picha has experience working with the government of Honduras on the transportation, storage, and handling of bananas. Photographs taken of the banana peel, at approximately 10:20 A.M. the day of the accident, revealed the skin to be split into three sections joined at what would have been the bottom of the banana. According to Dr. Picha, the dark brown or black color of two of the sections, as depicted in the photographs, indicated that they had received some sort of trauma-possible having been stepped on or rolled over by a shopping cart. Because of the damage to these sections, they were useless in trying to determine how long before the photographs were taken they had been peeled from a banana. However, the third section did not appear to have been damaged. Based upon its color, Dr. Picha estimated that the skin had been peeled from a banana sometime between 9:45 and 10:05 A.M. Considering that Mr. Dela-houssaye fell at 9:50 A.M., this would have given Delchamps only five minutes to discover the banana peel.
The trial judge concluded that Mr. Delahoussaye had “failed to carry his burden of proving that Delchamps had either created or had actual knowledge or constructive knowledge of the banana peel on the floor prior to Delahoussaye’s fall or that Del-champs failed to exercise reasonable care.” The evidence reveals that Delchamps had an established, reasonable safety procedure. That procedure required daily mopping and aisle by aisle inspection of the whole store as well a hourly inspection of the store via perimeter walks by a manager. Management personnel also testified that employees working in areas such as produce, where foreign substances were most 16likely to find their way onto the floor, had the responsibility to constantly inspect their areas for any hazards and to immediately clean up anything found on the floor.
Further, it was established that the store manager, Ken Boyer, had inspected the school supply aisle, the location of the accident, approximately five minutes before the accident. Additionally, plaintiffs own ex-pelas testimony placed the time the banana was peeled within the approximately five minutes between Mr. Boyer’s inspection and plaintiffs fall.
The standard of review mandated by our supreme court in Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993) is that an appellate court cannot set aside a judge’s or jury’s findings of fact absent manifest error or a clearly wrong determination. We do not find such error in this case.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, Leon Delahoussaye.
AFFIRMED.