J2.SHORTESS, Judge.
Twelve-year-old Erica Williams (Erica) slipped and fell in a Rouse’s Supermarket (Rouse’s) in Thibodaux, injuring her right knee. Her mother, Alice Williams (plaintiff), filed suit individually and on Erica’s behalf against Rouse’s Enterprises, Inc. (Rouse’s), and its insurer, Audubon Indemnity Insurance Company (defendants). After bench trial, the court rendered judgment in defendants’ favor, dismissing plaintiffs suit. Plaintiff appeals.

FACTUAL BACKGROUND

Plaintiff, her sister Lydia Bernard, their one-year-old niece Rochelle, and Erica went grocery shopping on October 2, 1993. Plaintiff and Bernard walked into the store ahead of Erica, who was carrying Rochelle. They stopped at the produce section and instructed *1299 Erica to get a shopping cart. The shopping carts were located at the front of the store near the door. Erica slipped and fell as she approached the carts and landed with her left leg forward and her right leg behind her. Someone notified Bruce Naquin, the manager, and Chad Morvant, the assistant manager, of the accident. At some point thereafter Bernard moved the shopping carts away from the wall and found on the floor a round, hard silvery object the size of a very small green sweet pea that looked like a BB (shot pellet) or ball bearing. She gave the object to Morvant, who subsequently misplaced it.

PLAINTIFF’S STRICT LIABILITY THEORY

Plaintiff contends, and the trial court found it more likely than not, that Erica slipped on the object, which was probably a ball bearing. Plaintiff alleged a strict liability theory under Louisiana Civil Code article 2317, asserting the ball bearing came from a broken wheel on one of defendant’s shopping carts. This theory was not persuasive to the trial court because, without stating reasons, it found this was not a strict liability case. Plaintiff assigns this finding as error.
To prevail under article 2317, plaintiff had to show Rouse’s owned a defective shopping cart which caused plaintiffs injury.[1] Plaintiff presented no proof the ball bearing came from a defective shopping cart. Plaintiff and Bernard testified they did|3not know where the object came from. Naquin testified he looked at the shopping carts after the accident but found no broken wheels. He further testified no one reported a broken wheel after the accident, and the store did not replace any shopping carts within a few days after the accident. Morvant also testified no one complained to him about a broken wheel after the accident.
Furthermore, plaintiff presented little proof that the wheels on Rouse’s shopping-cart even had ball bearings. Although Rouse’s responded “Yes” to an interrogatory asking whether its shopping carts utilized ball bearings, at trial Donald J. Rouse, Rouse’s president, testified he had personally taken a wheel apart and found it contained only hard plastic bushings, not ball bearings. Morvant also testified he had examined a wheel and found only bushings.
In light of plaintiffs failure to prove Rouse’s owned a shopping cart with a defective wheel, or to prove a defective wheel could have caused Erica’s accident, we find no error in the trial court’s denial of plaintiffs strict liability claim.

PLAINTIFF’S NEGLIGENCE CLAIM

In addition to her strict liability theory, plaintiff asserted an alternative negligence claim. Slip-and-fall eases based on negligence are governed by Louisiana Revised Statute 9:2800.6. That statute provides that a plaintiff in a slip-and-fall case against a merchant bears the burden of proving (1) the injury was caused by a condition existing in or on the merchant’s premises, (2) the condition presented an unreasonable risk of harm, (3) the risk of harm was reasonably foreseeable, (4) the merchant either created the hazard or had actual or constructive notice of it, and (5) the merchant failed to exercise reasonable care. “Constructive notice” is defined in the statute as meaning “the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.”[2]
Defendants conceded plaintiff proved the first three elements but denied she proved notice or lack of reasonable care. The trial court found plaintiff failed to carry her burden of proof because Rouse’s did not have actual or constructive notice. The pcourt further held plaintiff had “failed to prove negligence in any manner whatsoever.” Plaintiff contends the trial court erred in failing to find defendants liable because, according to plaintiff, Rouse’s had no policy for inspecting the floor in the area where the shopping carts were kept.
In Welch v. Winn-Dixie Louisiana, 94-2331, p. 17, (La.5/22/95), 655 So.2d 309, 318, the' Louisiana Supreme Court held a plaintiff could establish lack of reasonable care by *1300 proving a merchant had no “uniform, mandatory, non-discretionary, clean-up and safety procedure.” In the absence of such a policy, the court held, it was unnecessary for a plaintiff to show precisely how long a foreign substance had been on the floor.[3]
Naquin had worked for defendant approximately six years at the time of this accident but was no longer employed by defendant at the time of trial. He testified that at the time of Erica’s accident, Rouse’s had a floor-inspection and floor-care policy. Every thirty minutes an employee swept and mopped, and in overlapping thirty-minute intervals, the manager or assistant manager inspected the floor. When the employee finished the floor care, he or she would punch a time clock and sign a floor-care log. The same was done by managers, who signed a “manager’s floor inspection record” and punched a time clock. The form contained the following language at the top: “By signing this form in the space(s) provided, I hereby certify that I have made a visual inspection and assure that all floor areas are free of spills, broken products or any other hazard.” (Emphasis added.)
’ Morvant corroborated Naquin’s testimony regarding the floor care policy. He stated that after the floor-c.are personnel finished, a manager would walk through the entire store to ensure there was nothing on the floor.
Defendants introduced the floor-inspection record from the day of the accident. The time clock recorded hours in military time, and instead of minutes, it recorded one-hundredths of hours. Thus, 1:30 p.m. would be recorded as “13 50.” The record shows Na-quin inspected the floors at “12 00” and “12 40,” which was noon and 12:24 Isp.m. This accident occurred at 12:30 p.m. Thus, defendants showed that Rouse’s not only had a floor-inspection policy but that the policy had been followed on the day of the accident.
Plaintiff contends defendants failed to prove Rouse’s managers inspected the area under the shopping carts. Naquin testified this area was in the front of the store by the entrance. We think it logical to assume “all floor areas” includes this area. The managers made only a visual inspection and did not move the shopping carts to check under them, as Bernard did to find the ball bearing. We believe, however, that a visual inspection is sufficient to show the exercise of reasonable care.
Because defendants showed Rouse’s had a policy that had been followed, plaintiff had to show Rouse’s either created the dangerous condition or had actual or constructive notice thereof. Plaintiff does not contend Rouse’s placed the ball bearing on the floor, and she presented no evidence Rouse’s had actual or constructive notice of it. Plaintiff and Bernard testified they saw nothing on the floor when they entered the store. They did not know how long the ball bearing had been on the floor. No evidence was introduced to show the object had been on the floor for such a length of time that it would have been discovered through the use of ordinary care. To the contrary, defendants showed Naquin had inspected the floors only six minutes before the accident.

CONCLUSION

For the foregoing reasons, we find the trial court correctly dismissed plaintiffs claims in strict liability and in negligence, and we affirm the judgment of the trial court dismissing plaintiffs suit at her cost.
AFFIRMED.

. See Celestine v. Union Oil Co., 94-1868, p. 7 (La.4/10/95), 652 So.2d 1299, 1303.

. La. R.S. 9:2800.6(C)(1).

. Welch was legislatively overruled by Acts 1996, number 8, section 1 (First Extraordinary Session), effective June 18, 1996. That amendment applies, however, only to causes of action which arose on or after the effective date of the act.