ANGELA EXPOSE

VERSUS

ROUSES ENTERPRISES, LLC
D/B/A ROUSES MARKETS

\* NO. 2023-CA-0587

\* COURT OF APPEAL

\* FOURTH CIRCUIT

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2019-09741, SECTION "A"
Honorable Monique G. Morial, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

Vincent R. Arnona
Donald L. Rose, III
Toni R. Arnona
ARNONA ROSE, LLC
1130 Tchoupitoulas St.
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Kenneth J. Deroche, Jr.
BERNARD, CASSISA, ELLIOTT & DAVIS
3838 North Causeway Blvd., Suite 3050
Metairie, LA 70002-8357

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**MAY 7, 2024**

*JCL*

*PAB*

*TGC*

This is a tort claim. Defendant/appellant, Rouse's Enterprises, LLC ("Rouses"), appeals the June 14, 2023 judgment of the city court, which awarded damages to plaintiff/appellee, Angela Expose ("Expose"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from a slip and fall accident at a Rouses supermarket, located on Carrollton Avenue in New Orleans, Louisiana. Expose alleges that, on or about September 14, 2019, she was purchasing groceries at Rouses when she slipped on a green pepper, which was left on the floor of the checkout line, and fell, sustaining personal injuries. On November 25, 2019, Expose filed a petition for damages against Rouses. On January 25, 2023, the city court granted partial summary judgment in favor of Rouses, finding that Rouses did not create the condition of its floor that caused Expose's fall. The city court found, however, that a genuine issue of material fact remained as to whether Rouses had constructive notice of the condition at issue.

A bench trial on the remaining issues proceeded on April 26, 2023. The parties jointly introduced the store's security video footage, which depicted the pepper falling from a customer's basket to the floor of the checkout area; Expose's accident; and views of the checkout area in the intervening time between these events, which lasted fifteen minutes and forty seconds. No Rouses floor care logs were introduced, corresponding to any inspections or cleaning of the store floor on the morning of the accident. The only witnesses to testify at trial were Expose and Rouses store director, Robert Van Vranken ("Van Vranken"). Dachel Roberts ("Roberts"), who was the Rouses cashier for the checkout aisle where Expose fell, did not testify.

Expose testified that on the morning of her accident, the store was full of customers, and there were one or two customers in front of her in the checkout line. Upon reaching the register counter, she placed a few items on the counter and pushed her basket forward, when she slipped and fell on the floor. After she fell, she saw the green pepper on which she slipped, which looked like it had been crushed when she stepped on it. She did not see the pepper on the floor before she stepped on it, and she did not know how the pepper came to be on the floor. She was unaware whether any Rouses employee knew of the pepper's presence on the floor before she fell.

Van Vranken testified that he had been a store director at Rouses for seven years. He did not witness Expose's accident. He identified accident reports that he, Expose, and the cashier, Roberts, completed after the accident. He also identified a

2

written Rouses' floor care policy, which he testified was in effect at the time of Expose's accident. He explained that that, under the policy, "[a]ny time you see something that may have fallen …, it is your responsibility as an employee to stop and then find somebody to assist them until it's cleaned up." Rouses expects employees to look for hazards and debris on the floor as they go about their normal duties. He testified that a floor care clerk is responsible for "servicing the floors, sweeping, picking up debris" and, secondarily, cleaning the bathrooms. A floor care clerk's full inspection of the entire store would take one hour. Store managers also "monitor the floors on a regular basis, pretty much all day." Cashiers' responsibilities for floor care include reviewing their lanes on a "periodic basis." If they see fallen items or spills, they are required to call a floor care clerk or turn on their light for a manager, and the manager will call a floor care clerk. Van Vranken explained that when cashiers are not checking out customers, they should be standing at the front of their registers "spotting the dot." Spotting the dot means standing at the front of the register and inspecting the lane, part of which is looking out for debris or other hazards in the checkout aisle. According to Van Vranken, the written floor care policy has no specific requirements for checkout aisle inspection, but the policy applies to the entire store.

At the time of Expose's accident, Rouses kept three different floor care logs: one for floor cleaning, one for the manager on duty, and one for produce. An electronic log was also kept to synchronize the timing of the paper logs to a badge scanner. As part of the daily procedure to close the store, logs were gathered,

3

scanned, and sent to Rouses' office. Van Vranken was unaware of any occasion on which this procedure was not followed, and he could not explain the absence of any floor care logs for the morning of the accident.

During his testimony, Van Vranken viewed the store footage of the accident. Based on his view of the footage, Roberts was checking out customers "pretty much" the entire time while the pepper was on the floor. He did not see on the video any Rouses employee passing through the checkout aisle while the pepper was on the floor. Van Vranken observed on the video, approximately 25 seconds before Expose entered the aisle, Roberts checking and touching a cellular watch on her wrist. No customers were visible in the aisle, and Van Vranken admitted that this moment "could have been" a good opportunity for Roberts to spot the dot instead of playing with her watch. Van Vranken further testified that, if Roberts had spotted the dot, she could have seen the pepper. On a second review of the same video, Van Vranken noted what he believed to be the front of Expose's shopping cart entering the aisle. Van Vranken stated that he would not expect a cashier to spot the dot if a customer was in the aisle.

Van Vranken testified that employee use of cell phones and ear buds while on the clock violates the Rouses employee handbook. He stated that texting from a watch was not a violation of the store's cell phone policy. He agreed, however, that texting from a watch could distract an employee from paying attention to customers.

4

Van Vranken also viewed footage from earlier in the morning before the pepper fell to the ground, wherein Roberts left her register. Van Vranken testified that he assumed she was spotting the dot at those intervals, based on the direction in which she was walking. No video footage visibly showed Roberts spotting the dot.

At the conclusion of the trial, the city court took the matter under advisement.

On June 14, 2023, the city court rendered judgment in favor of Expose, awarding $6,500.00 in general damages and $5,001.50 in special damages, for a total award of $11,501.50, plus costs and interest from the date of judicial demand. This appeal followed.

## LAW AND ANALYSIS

**Assignments of Error**

Rouses raises four assignments of error on appeal, arguing that the city court erred in the following respects:

1. shifting the burden to Rouses to prove its lack of culpability;

2. applying an adverse presumption against Rouses for failing to call its clerk, Dachel Roberts, as a witness at trial;

3. finding that Expose met her burden of proving that Rouses had constructive notice of the condition of its floor; and

4. finding that Expose met her burden of proving that Rouses failed to exercise reasonable care.

**Standard of Review**

Appellate courts review the lower court judge's findings of fact under the manifest error or clearly wrong standard of review. *Hankton v. State*, 19-0557, p. 4 (La. App. 4 Cir. 3/4/20), 294 So.3d 25, 30 (quoting *Keller v. Monteleon Hotel*, 09-1327, p. 2 (La. App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042); *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). "To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous." *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 15-0301, p. 4 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727; *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact finder, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Stobart*, 617 So.2d at 882. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*, 617 So.2d at 883. "However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Brenner v. Zaleski*, 14-1323, p. 3 (La. App. 4 Cir. 6/3/15), 174 So.3d 76, 79 (citing *Evans v. Lungrin*, 97-0541, 97-0577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735).

**Merchant Liability Statute – La. R.S. 9:2800.6**

Expose's claims implicate Louisiana's Merchant Liability Statute, La. R.S.

9:2800.6, which governs negligence claims arising from a fall due to a condition

on a merchant's premises. The statute provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the

7

exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

In general, under La. R.S. 9:2800.6, Rouses owed a duty to Expose "to exercise reasonable care to keep its floors in a reasonably safe condition and to keep the store free of hazardous conditions." *Thompson v. Winn-Dixie Montgomery, Inc.*, 15-0477, p. 7 (La. 10/14/15), 181 So.3d 656, 662. To prove that Rouses' breach of this duty caused her fall, Expose had the burden of proving the three elements of La. R.S. 9:2800.6(B):

(1) the pepper on the floor "presented an unreasonable risk of harm that was reasonably foreseeable";
(2) Rouses "either created or had actual or constructive notice" of the pepper before the occurrence of the damage; and
(3) Rouses "failed to use reasonable care."

*See Latour v. Steamboats, LLC*, 23-00027, p. 8 (La. 10/20/23), 371 So.3d 1026, 1035.

**Burden of Proof**

Rouses first argues that the city court erred, as a matter of law, when it impermissibly shifted the burden of proof to Rouses to show its lack of culpability. The city court's judgment and reasons do not explicitly mention a shifting burden of proof. Rouses points to the following statements in the reasons for judgment:

8

- "Mr. Van Vranken had no explanation for the absence of floor care logs in the morning. He testified that he had no records to demonstrate that the floor had been inspected between 8:00 a.m. and 9:00 a.m. that morning. Also there were no hand written floor care reports from the date of the accident."

- Van Vranken "could not offer any proof that Rouses floor care policy was implemented on the date of Ms. Expose's accident."

- "Van Vranken could not offer any proof that these [floor care] policies had been followed on the morning of the accident."

- Van Vranken "could not produce any corroboration of the cashier following store policy, or the floor care policy being implemented through his testimony or evidence introduced into the record."

Expose counters that the city court correctly found that she met her burden of proof, and merely acknowledged a lack of evidence that Rouses used reasonable care. Expose asserts this is not legal error. We recognize that appeals are taken from judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572. Even so, appellate courts may consider reasons for judgment in determining whether the lower court committed legal error. *Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 17-1005, p. 6 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 499.

Rouses correctly states that La. R.S. 9:2800.6 does not shift the burden of proof to the merchant to prove its lack of culpability. *See Davis v. Cheema, Inc.*, 14-1316, p. 15 (La. App. 4 Cir. 5/22/15), 171 So.3d 984, 992 (quoting *White v. Wal-Mart*, 97-0393, p. 4 (La. 9/9/97), 699 So.2d 1081, 1084)("the statute simply does not provide for a shifting of the burden"). The burden of proof was on

9

Expose, not Rouses, to prove the three elements of La. R.S. 9:2800.6(B). The city court's reasons, however, do not reveal a legal error, and the record does not show any erroneous burden shifting interdicting the fact-finding process.

Rather, the evidence adduced at trial demonstrates that Rouses had a written floor care policy. Van Vranken testified that Rouses' policy mandated three types of floor care logs, and neither party introduced written reports of floor inspections occurring during the morning of the accident. The video, which the parties jointly introduced into evidence, did not reveal any Rouses employee entering the checkout aisle in question, and the city court judge as fact finder could have reasonably determined that the video did not conclusively show the cashier spotting the dot or inspecting the aisle during the period in question. We cannot say, based on the record before this Court, that the lack of evidence of floor inspections is tantamount to impermissible burden shifting. We find this assignment without merit.

### Adverse Presumption

Rouses asserts that that the city court erroneously applied an adverse presumption against it based upon its failure to call the cashier, Roberts, as a witness at trial. Rouses points again to the reasons for judgment, stating that "[t]he lack of testimony from the cashier who attended the register on the date of the accident to corroborate whether she inspected her aisle for debris prior to Ms. Expose's fall bolsters the plaintiffs claim." We find no support for the argument that any adverse presumption was applied against Rouses.

10

An adverse presumption exists when a party who has control over a favorable witness fails to call him or her to testify. *Brooks v. Reimonenq*, 10-0296, p. 6 (La. App. 4 Cir. 7/21/10), 44 So.3d 824, 829 (citing *Driscoll v. Stucker*, 04-0589, p. 18 (La. 1/19/05), 893 So.2d 32, 47). "The adverse presumption is referred to as the 'uncalled witness' rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence but fails to call those witnesses." *Id.* "[W]here a litigant fails to produce evidence or witnesses available to him and no reasonable explanation is made therefore, the presumption is that the production of such evidence or witnesses would have been unfavorable to his cause." *Lawrence v. Gov't Emps. Ins. Co.*, 13-1296, p. 24 (La. App. 4 Cir. 10/15/14), 151 So.3d 917, 932. The adverse presumption does not apply when the witness is equally available to both parties. *Id.*

Rouses insists that the uncalled witness rule does not apply because neither party subpoenaed Roberts and no showing was made that Roberts was still employed by Rouses at the time of trial or that she was not equally available to both parties. We agree. However, we see no indication that the lower court applied the uncalled witness rule to Rouses' detriment. No finding of adverse presumption appears in the judgment, reasons, or elsewhere in the record. Instead, as Expose points out, the city court merely recognized there was no testimony from Roberts to reinforce Van Vranken's testimony. We find no merit in this assignment.

**Constructive Notice**

Rouses contends that the city court erred in finding that Rouses had constructive notice of the alleged hazard prior to Expose's fall. A lower court's determination whether a merchant had constructive notice of a condition creating an unreasonable risk of harm to its customers is a factual finding that may not be set aside absent a showing of manifest error. *Smith v. Brookshire Grocery Co.*, 32,619, p. 5 (La. App. 2 Cir. 1/26/00), 750 So.2d 450, 453 (citing *Stewart v. Great Atl. & Pac. Tea Co.*, 94-1592, p. 4 (La. App. 4 Cir. 3/16/95), 657 So.2d 1327, 1330). Under the Merchant Liability Statute, constructive notice means that "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(D)(1). However, the mere presence of a merchant's employee in the vicinity of the condition "does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." *Id.*

To establish constructive notice, the plaintiff must show a "temporal element," meaning "a prerequisite showing of some time period" during which the condition existed prior to the fall. *White*, 97-0393, p. 4, 699 So.2d at 1084. "[T]here is no bright line time period," and "the time period need not be specific in minutes or hours. . . ." *Id.* "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question. . . ." *Id.*

According to the video evidence jointly introduced at trial, the green pepper fell from another customer's basket and remained on the floor for fifteen minutes and forty seconds. This time period is established and undisputed. In the absence of a bright line rule, the parties dispute whether fifteen minutes and forty seconds is sufficiently lengthy such that Rouses should have discovered the condition of its floor. Rouses cites cases wherein courts have determined, under the facts of those cases, that ten minutes or less was not sufficiently lengthy for the merchant to have discovered the allegedly hazardous condition.[1] Rouses urged the city court and our Court to adopt the federal district court's findings in *Robinson v. Wal-Mart Stores, Inc.*, No. CV 15-1783, 2016 WL 5210711, at *6 (W.D. La. Sept. 15, 2016), that sixteen minutes was not sufficient to impose constructive notice on the merchant of water on the floor. The city court, in its reasons for judgment, declined to accept *Robinson*'s findings as a bright line rule and deemed the case merely instructive, but not binding precedent.

The city court could have reasonably found, based on its review of the video evidence, that the length of time the pepper was on the floor was enough time for three other customers to interact with it, either stepping on it, kicking it, or rolling over it with a grocery cart. Moreover, the city court could have determined from the video that Roberts was not busy the entire time the pepper was on the floor and that, in four brief moments of downtime, she checked and touched an Apple Watch

---

[1] *See Delahoussaye v. Delchamps, Inc.*, 96-1677 (La. App. 3 Cir. 4/30/97), 693 So.2d 867; *Williams v. Rouse's Enterprises, Inc.*, 96-1607 (La. App. 1 Cir. 5/9/97), 693 So.2d 1298; *Nash v. Rouse's Enterprises, LLC*, 15-1101 (La. App. 1 Cir. 2/26/16), 191 So.3d 599; *Courington v. Wal-Mart Louisiana LLC*, No. CV 2:17-00771, 2018 WL 707521 (W.D. La. Feb. 2, 2018).

on her wrist. The lower court could have reasonably concluded that, if Roberts had "spotted the dot" during moments of downtime, the pepper would have been discovered before Expose's fall. Rouses insists that a customer was present in Roberts' aisle the entire time that the pepper was on the floor, and that its cashiers should not be required to spot the dot or check the aisle while a customer is in the aisle. We cannot say that the city court's interpretation of the evidence was clearly wrong. Even if we would have reached a different conclusion, we have no authority to substitute our factual findings for those of the lower court where the lower court's findings have a reasonable basis in the record. "The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently." *Cosby v. Holcomb Trucking, Inc.*, 05-0470, p. 13 (La. 9/6/06), 942 So.2d 471, 479 (citations omitted). In the absence of manifest error, we will not disturb the city court's judgment.

**Reasonable Care**

Lastly, Rouses argues that the city court erred in finding that Expose met her burden to prove that Rouses failed to exercise reasonable care. "Generally, breach of a duty is the failure to exercise reasonable care under the circumstances." *Harvey v. Hamby*, 23-0084, p. 13 (La. App. 4 Cir. 10/4/23), 376 So.3d 225, 236 (citations omitted). Breach of a duty is a question of fact, which is subject to the manifest error standard of review. *Id.*; *Hanks v. Entergy Corp.*, 06-477, p. 22 (La. 12/18/06), 944 So.2d 564, 580.

The Merchant Liability Statute imposes a duty on merchants to "exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). "This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." *Id.* Courts examining the duty of reasonable care have found that merchants must undertake:

> reasonable protective measures, including periodic inspections, … to ensure that the premises are kept free from substances or conditions that might cause a customer to fall. Whether measures taken are reasonable must be determined in light of the circumstances of each case. … [T]he degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations.

*Nelson v. Southeast Food, Inc.*, 39,157, p. 14 (La. App. 2 Cir. 1/28/05), 892 So.2d 790, 798 (internal citations omitted).

As one court has put it, "whether a merchant has a safety policy, whether that policy specifically provides how often employees are to inspect for unsafe conditions, and whether any such policy was violated are certainly relevant questions, the answers of which significantly aid a trial court in determining whether a merchant failed to exercise reasonable care." *Blackman v. Brookshire Grocery Co.*, 07-348, pp. 7-8 (La. App. 3 Cir. 10/3/07), 966 So.2d 1185, 1190.

Rouses' claim is, essentially, that the city court attached too much significance to the lack of floor care logs in evidence, and ignored Roberts' written

statement,[2] the video evidence corroborating the statement, and Van Vranken's testimony regarding the video and his knowledge of periodic inspections and the store's floor care procedures. Rouses promotes one fair interpretation of the evidence: accepting Van Vranken's testimony that he and the floor care clerk would have been inspecting the entire store throughout the day, Roberts' actions cleaning up spilled ice earlier on the morning of the accident, and Van Vranken's interpretation of the video showing Roberts leaving her register as proof of spotting the dot. It is apparent, however, that the city court accepted another view of that evidence and weighed it differently. The city court could have been reasonably persuaded by video evidence of Roberts – present in the vicinity of the pepper but tinkering with her watch – during the time when Van Vranken testified she could have spotted the dot and discovered the pepper in the checkout aisle. Even though the city court could have considered Van Vranken's testimony that he was the manager on duty and would have been performing inspections, the court may have recognized that Van Vranken did not recount any specific recollection of inspecting the floors the morning of the accident.

It is well-settled in our jurisprudence that, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly

---

[2] Roberts' written statement reads:

> Before the customer came through the line I previously inspected the floor because I was told there were pieces of ice. I made sure I wiped the floor leaving no wet spots. When she came through my line she sat down on the floor. It was not a slip and fall. After she sat down she laid on her back and asked for manager.

erroneous. *Lafayette City-Parish Consol. Gov't v. Person*, 12-0307, p. 7 (La. 10/16/12), 100 So.3d 293, 298. As the Supreme Court recently summarized:

> in an La. R.S. 9:2800.6 action, when a district court resolves conflicts in a plaintiff's favor (in the absence of overwhelming objective evidentiary contradiction, internal inconsistency, or implausibility), an appellate court would be unable to say that the district court manifestly erred in its decision to find the defendant liable for the plaintiff's injuries upon its determination that a condition on its premises presented an unreasonable risk of harm that was reasonably foreseeable, that prior to the accident the defendant either created or had actual or constructive notice of the condition that caused the damage, and that the defendant failed to exercise reasonable care.

*Jones v. Mkt. Basket Stores, Inc.*, 22-00841, p. 14 (La. 3/17/23), 359 So.3d 452, 463.

The record before this Court reveals a reasonable factual basis for the findings of the city court, and we cannot discern any overwhelming objective evidentiary contradiction, internal inconsistency, or implausibility. The city court's findings of fact are not clearly wrong or manifestly erroneous. We find this assignment of error without merit.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the city court.

**AFFIRMED**

17